Tom W. RYAN et al., Plaintiffs,

v.

**DEPARTMENT OF JUSTICE,
Defendant.**

Charles R. HALPERN et al., Plaintiffs,

v.

**DEPARTMENT OF JUSTICE,
Defendant.**

Civ. A. Nos. 79–1042, 79–1043.

United States District Court,
District of Columbia.

July 11, 1979.

Girardeau A. Spann, David C. Vladeck, Washington, D.C., for plaintiffs.

Thomas W. Hussey, Atty., Dept. of Justice, Washington, D.C., for the Department.

## MEMORANDUM OPINION

BARRINGTON D. PARKER, District Judge:

The question presented in these consolidated proceedings is whether the Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires disclosure to the plaintiffs of responses by United States Senators and their judicial nominating commissions to a questionnaire on judicial nominations prepared and sent to them by the Attorney General. The Court rules that disclosure is not required.

Pursuant to the Omnibus Judgeship Act of 1978,[1] President Jimmy Carter issued Executive Order 12097[2] which established judicial merit-selection guidelines. The Attorney General's questionnaire sought from the Senators a description of the efforts extended to comply with the guidelines.

The defendant Department of Justice denied the plaintiffs' FOIA requests for the material, viewing the questionnaire responses as communications between the President and Senators, closely linked to his constitutional appointment powers, and therefore not "agency records" subject to FOIA. Even assuming the responses are FOIA records, the Department argues that they are exempt from mandatory disclosure as pre-decisional advisory material under § 552(b)(5).

The parties have filed cross-motions for summary judgment.[3] The Court has considered the several memoranda of points and authorities, the argument of counsel and other relevant case law. It has also had the benefit of an *in camera* review of a random sample of five questionnaire responses. Based on the undisputed material facts, the Court concludes as a matter of law that the questionnaire responses are not Department of Justice records for purposes of FOIA. For the reasons outlined below, the complaints are dismissed and summary judgment will be entered for the Department of Justice.

## BACKGROUND

The material facts in this litigation are not disputed. The Omnibus Judgeship Act requires the President to provide for merit-selection of federal judges and thereby improve upon traditional bases of appointment. Facing the prospect of filling 117 new federal district court judgeships, President Carter issued merit-selection guidelines in EO 12097. Nominees are to have the requisite "character, experience and ability, and commitment to equal justice;" be "even-tempered and free of biases against any class of citizens or any religious or racial group;" and possess "outstanding legal ability and competence."

Section 1-1 of the Executive Order charges the Attorney General with receiving, evaluating and making recommendations of potential nominees to the President.

1. 28 U.S.C. § 133 note.

2. 43 Fed.Reg. 52455 (Nov. 13, 1978). The Executive Order is attached as Appendix A.

3. Defendant filed a motion to dismiss for failure to state a claim or for summary judgment. Because the Court has considered affidavits and documents outside the pleadings, the Court treats this solely as a motion for summary judgment. Fed.R.Civ.P. 12(b).

As part of this process, he is to consider whether "an affirmative effort has been made . . . to identify qualified candidates, including women and members of minority groups," and whether the guidelines have been followed. To this end, on November 8, 1978, the Attorney General submitted the following questionnaire to all Senators:[4]

1. Describe the effort which was made to identify qualified candidates.

2. Describe the process by which all persons identified and interested were considered.

3. How many persons were considered?

4. With respect to each person recommended, does he or she meet each of the standards set forth in Section 2 of the Executive Order?

5. With respect to each person recommended, submit a copy of any questionnaire or resume of biographical information furnished by that person.

6. If a nominating commission was used:

(a) how was the commission appointed?

(b) how many persons were on the commission?

(c) how many of the members were female?

(d) how many of the members were of a minority race?

(e) how many of the members were nonlawyers?

The plaintiffs are individuals and groups who monitor federal judicial appointments with the goals of opening the selection process to public scrutiny and broadening the membership of the federal judiciary to include a wider representation of women, minorities and public interest lawyers.[5] In early 1979, the plaintiffs sought FOIA disclosure of the questionnaire responses received by the Department of Justice. On May 9, 1979, the Department of Justice

denied plaintiffs' requests, asserting that the questionnaire responses are not agency records under FOIA and would, in any event, be exempt from mandatory disclosure as pre-decisional advisory material under § 552(b)(5).

Government counsel represented at oral argument on June 27, 1979, that more than 50 responses had been received, representing all but four states. The responses vary in format and scope, in some instances including the names of individuals. Responses received as of May 9, 1979, are indexed in the affidavit of Quinlan J. Shea, Jr.

## ANALYSIS

The threshold legal question is whether the questionnaire responses are "agency records" covered by the Freedom of Information Act. The position of the parties may be summarized. The plaintiffs contend that the responses are unquestionably Department of Justice records, since the questionnaire was drafted and issued by the Department for return, retention and evaluation by that agency to assist the Attorney General in fulfilling his duties under Executive Order 12097. The Department of Justice, on the other hand, argues that any connection it has with the questionnaire responses is coincidental and that no other agency is involved; the documents are written by Senators or state nominating commissions and contain information for President Carter, who receives the information through the Attorney General acting as his legal advisor.

■ The law in this Circuit is clear that physical possession of records by a government agency is not the sole criterion for determining whether they are agency records. *Goland v. CIA,* No. 76–1800, slip op. at 11 (D.C.Cir. May 23, 1978); *Forsham v. Califano,* 190 U.S.App.D.C. 231, 239 n. 19, 587 F.2d 1128, 1136 n. 19 (1978).

4. Attorney General Griffin Bell's covering letter is attached as Appendix B.

5. Plaintiffs in C.A. No. 79–1043 seek broad access to all the responses. Plaintiffs Tom W. Ryan, Jr. and Missouri Public Interest Research Group in C.A. No. 79–1042 seek only the response of Senator Eagleton.

The governing principle is that only if a federal agency has created or obtained a record . . . in the course of doing its work, is there an agency record that can be demanded under FOIA (footnotes omitted).

*Forsham,* 190 U.S.App.D.C. at 239, 587 F.2d at 1136. The status of a document in the possession of an agency depends on "the circumstances attending the document's generation," the nature of the information, and the relationship of the agency to the documents and other parties involved. *Goland,* slip op. at 11–14. For example, in *Goland,* the court held that a copy of the transcript of a secret Executive Session Congressional Committee hearing on intelligence methodology, marked secret, retained by the CIA for internal reference purposes, was not a CIA document for FOIA purposes. The circumstances demonstrated Congress' intent to exert continued control over the transcript and the decision to make a copy public could only be made by Congress.[6]

In this case, the questionnaire responses were returned to the Attorney General and are physically located at the Department of Justice. Personnel other than the Attorney General obviously are involved in processing the responses, most notably Assistant Attorney General Michael J. Egan, identified in Attorney General Bell's cover letter to the Senators as the appropriate official for them to contact. However, given the history of these responses, even these links to the Department of Justice do not make them agency records subject to disclosure under FOIA.

The questionnaire responses ultimately owe their existence to President Carter's exercise of his Article II constitutional authority to nominate and, by and with the advice and consent of the Senate, appoint federal judges. Even before the Omnibus Judgeship Act of 1978, the President depended upon information and counsel from government and outside sources to determine nominees. The need for information and assistance has been magnified by President Carter's issuance of merit-selection guidelines in Executive Order 12097. For this reason, he specifically directed the Attorney General to gather and assemble material on candidates and on the nomination process itself from Senators and state nominating commissions. The Attorney General chose to solicit information by questionnaire.

■ This particular approach to the judicial appointment process makes the status of the questionnaire responses unique. Unlike the congressionally-controlled transcript in *Goland,* they are not documents belonging to the Senators or the state nominating commissions. They are not solely presidential documents or records of the Attorney General. Nor are they, as defendant represents, strictly communications between United States Senators and the President. They are best described as the collective product and property of the President, the Attorney General, the Senators, and the state commissions, none of which are agencies for FOIA purposes.[7] The responses certainly are not under the control of the Department of Justice. Given the presidential appointment context from which the responses originated, they cannot be compared to compliance or other required reports routinely filed with and left in the custody of an executive agency.

The Attorney General understandably has utilized his staff and facilities at the

---

6. In *Forsham,* the court ruled that raw data in the hands of investigators and university groups who conducted research with federal funds, though available to a federal agency, were not agency records. *See also Cook v. Willingham,* 400 F.2d 885 (10th Cir. 1968) (presentence report is judicial document, not FOIA agency record).

7. S.Rep. No. 1200, 93rd Cong., 2d Sess. 15 (1974); H.Rep. No. 1380, 93rd Cong., 2d Sess. 14 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267; *Stassi v. United States Department of Justice,* C.A. No. 78–0532 at 2 (D.D.C. March 30, 1979); *Ciccone v. Waterfront Commission of New York Harbor,* 438 F.Supp. 55, 58 (S.D.N.Y.1977).

Department of Justice to send, receive and digest the questionnaires and responses. This does not make the information gathering and analysis tasks any less his own, as specifically assigned by the President in the merit-selection guidelines of Executive Order 12097. Egan affidavit ¶¶ 6–7. The Attorney General is not conducting routine Department of Justice business but is acting as counsel and advisor to the President, who is exercising his Article II powers to nominate 117 new federal district judges. *See Stassi, supra. Cf. Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1971). There has not been, and there could not be, any suggestion that the Attorney General is nominally presiding over what are in reality Department of Justice functions in order to protect the questionnaire responses from FOIA release.[8]

■ The Court does not place undue emphasis on the relationship between the questionnaire responses and the President's constitutional nomination power; this is a Freedom of Information Act case and nothing more. There is no blanket privilege against disclosure of documents touching upon the President's appointment power. *Information Acquisition Corp. v. United States Department of Justice*, 444 F.Supp. 458, C.A. No. 77–840 at 3 (D.D.C. June 6, 1978); *Information Acquisition Corp. v. United States Department of Justice*, C.A. No. 77–839 at 4 (D.D.C. May 23, 1979).[9] However, the interplay between the FOIA and executive privilege comes into play only if documents are agency records. As discussed above, the questionnaire responses are not agency records because they do not fall out of the sphere of the appointment process into Department of Justice business.

President Carter has made the nomination and appointment process far more open by publishing merit-selection guidelines and by enlisting the Attorney General's assistance in ensuring compliance with the guidelines by Senators and state nominating commissions. These efforts and developments are salutary. However, by making consideration of potential nominees less secretive and political than in the past, the President has not made all aspects of the process open to public scrutiny under FOIA.

■ The Court is not unsympathetic to the plaintiffs' beliefs that the public interest favors Department of Justice disclosure of the questionnaire responses. However, a showing of need or public interest does not alone transform the requested documents into agency records subject to FOIA. *Sterling Drug, Inc. v. FTC*, 146 U.S.App.D.C. 237, 244, 450 F.2d 698, 705 (1971); *Forsham*, 190 U.S.App.D.C. at 237, 587 F.2d at 1134. The Court has also considered the argument that the Senatorial responses are the end product of the process of monitoring compliance with the guidelines, a process separate from the ongoing judicial appointment process. This argument has an initial appeal, but the fact is that the Attorney General generated the questionnaires to secure information for the President's use as an integral part of the Article II appointment power.

The plaintiffs may of course attempt to obtain copies of the questionnaire responses from the Senators and state nominating commissions authoring them. The Department of Justice represented that it has no objections to such a course of action.[10] Indeed, government counsel represented at oral argument that the Department is more concerned with safeguarding this channel

---

**8.** If there was any intention of achieving this result, the Court notes that the Attorney General would have had the questionnaire responses sent directly to the President.

**9.** In the *Information Acquisition* cases, this Court ordered partial release of Department of Justice personnel files on Chief Justice Warren E. Burger and Justice William H. Rehnquist. FBI background check material that invaded

personal privacy was withheld, while certain comments to the President or his designee concerning their appointments to government service were released. As compared to this case, the *Information Acquisition* cases clearly concerned Department records. The Court finds this distinction crucial.

**10.** Defendant's Motion to Dismiss at 31–32.

of information in the appointment process than in preventing disclosure of the factual material in the responses filed.

In light of this disposition, the Court need not address the second legal issue of whether the questionnaire responses, as agency records, would be exempt from mandatory disclosure as pre-decisional advisory memoranda to the President.

Ordered accordingly.

APPENDIX A

# presidential documents

[3195-01-M]

## Title 3—The President

Executive Order 12097             November 8, 1978

### Standards and Guidelines for the Merit Selection of United States District Judges

By virtue of the authority vested in me as President by the Constitution and the statutes of the United States of America, including Section 7(a) of the Omnibus Judgeship Act of 1978, providing that the President shall promulgate and publish standards and guidelines for the selection of nominees for United States district court judgeships, it is hereby ordered as follows:

1-1. *Nomination of District Judges.*

1-101. Whenever a vacancy occurs in a district court of the United States, the President shall nominate as district judge to fill that vacancy a person whose character, experience, ability, and commitment to equal justice under law qualifies that person to serve in the federal judiciary.

1-102. The Attorney General shall assist the President by recommending to the President persons to be considered for appointment who are qualified to be district judges and by evaluating potential nominees. The Attorney General shall receive recommendations of such persons from any person, commission or organization.

1-103. The use of commissions to notify the public of vacancies and to make recommendations for district judge is encouraged. The Attorney General shall make public the suggested guidelines for such commissions.

1-104. Before making recommendations, the Attorney General shall consider whether:

(a) Public notice of the vacancy has been given and an affirmative effort has been made, in the case of each vacancy, to identify qualified candidates, including women and members of minority groups;

(b) The selection process was fair and reasonable;

(c) The person or persons recommended meet the standards for evaluation set forth in Section 1-2 of this Order.

1-105. In evaluating proposed nominees, consideration will be given to reports of Department of Justice investigations and all other relevant information concerning potential nominees and their qualifications.

1-2. *Standards for Evaluating Proposed Nominees.*

1-201. The standards to be used in determining whether a person is qualified to serve as a district judge are whether that person:

(a) Is a citizen of the United States, is a member of a bar of a state, territory, possession or the District of Columbia, and is in good standing in every bar in which that person is a member;

(b) Possesses, and has a reputation for, integrity, good character, and common sense;

(c) Is, and has a reputation for being, fair, experienced, even-tempered and free of biases against any class of citizens or any religious or racial group;

(d) Is of sound physical and mental health;

(e) Possesses and has demonstrated commitment to equal justice under law;

(f) Possesses and has demonstrated outstanding legal ability and competence, as evidenced by substantial legal experience, ability to deal with complex legal problems, aptitude for legal scholarship and writing, and familiarity with courts and their processes;

(g) Has the ability and the willingness to manage complicated pretrial and trial proceedings, including the ability to weigh conflicting testimony and make factual determinations, and to communicate skillfully with jurors and witnesses.

1-3. *Amendments of Existing Orders.*

1-301. Section 3(b) of Executive Order 12059 of May 11, 1978 is amended to read as follows:

"(b) The Panel for the District of Columbia Circuit shall have the additional function of recommending nominees for the United States District Court for the District of Columbia. In exercising this function, the panel shall use the standards set forth in Executive Order 12097 and shall forward its recommendations to the Attorney General.".

1-302. Executive Order 12084, of September 27, 1978 is amended in the following respects:

(1) Section 1-202(d) is amended to read as follows:

"(d) report to the Attorney General, within the time specified in the notification, the results of its activities, including a list of persons whom the Commission considers to be best qualified to fill the vacancy.".

(2) Section 1-203 is amended to read as follows:

"1-203. In evaluating potential nominees, the Commission shall use the standards prescribed in Executive Order 12097.".

The White House,
*November 8, 1978.*

[FR Doc. 78-31952 Filed 11-8-78; 2:50 pm]

## APPENDIX B

## Office of the Attorney General
## Washington, D. C. 20530

November 8, 1978

Honorable
United States Senate
Washington, D.C.   20510

Dear Senator:

As you know, Section 7(a) of the Omnibus Judgeship Act of 1978 requires that the President issue standards and guidelines for the

merit selection of United States District Judges. The President has done that by Executive Order 12097, issued November 8, 1978. A copy of that Order is attached for your information.

Prior to making a recommendation to the President of the name of a person to fill any vacancy, the Attorney General is required to consider certain factors as set forth in the Order. As an aid in my consideration of these factors, the process will require that I have certain information. A form of questionnaire, designed to elicit that information in part, is enclosed. If a commission was used in selecting the name, the questionnaire could be filled out by the chairman of the commission.

Associate Attorney General Michael J. Egan is available to help in facilitating the selection and appointment of judges; and, of course, I am also available.

Yours sincerely,

Griffin B. Bell
Attorney General