617 F.2d 781
 199 U.S.App.D.C. 199, 5 Media L. Rep. 2345
 Tom W. RYAN, Jr., Missouri Public Interest Research Group, Appellants,
v.
DEPARTMENT OF JUSTICE.
Charles R. HALPERN, Judicial Selection Project, Dorothy J.
Samuels, Committee for Public Justice, Appellants,
v.
DEPARTMENT OF JUSTICE.
 Nos. 79-1777, 79-1778.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued 22 Oct. 1979.
Decided 7 Jan. 1980.
As Amended on Denial of Rehearing Feb. 25, 1980.
 
 Appeal from the United States District Court for the District of Columbia. (D.C.Civil Nos. 79-1042 & 79-1043)
 Girardeau A. Spann, Washington, D. C., with whom Alan B. Morrison and David C. Vladeck, Washington, D. C., were on brief, for appellants.
 Joseph B. Scott, Atty., Dept. of Justice, Washington, D. C., with whom Carl S. Rauh, U. S. Atty. and Leonard Schaitman, Atty., Dept. of Justice, Washington, D. C., were on brief, for appellee.
 Before McGOWAN and WILKEY, Circuit Judges, and GESELL*, United States District Judge for the District of Columbia.
 Opinion for the Court filed by WILKEY, Circuit Judge.
 WILKEY, Circuit Judge:
 
 
 1
 This case is an appeal from a district court order granting summary judgment to the Government in a Freedom of Information Act (FOIA) suit, on grounds that the requested documents were not "agency records" for FOIA purposes. We find on the basis of the undisputed facts that the documents are agency records; we therefore reverse with instructions to enter summary judgment for plaintiffs on this issue. We also consider the applicability of FOIA Exemption 5 to these documents, and remand for the district court to determine the extent to which that exemption bars disclosure.
 
 I. FACTS
 
 2
 In order to guide the selection of new federal district court judges, President Carter issued "merit selection" guidelines in Executive Order 12097.[1] This Order charges the Attorney General with the duty to evaluate potential nominees, receive recommendations from others, evaluate selection processes, and recommend persons to the President for appointment. Included in this task is the obligation to consider whether an affirmative effort has been made to identify qualified candidates, including women and members of minority groups. In November 1978 the Attorney General sent to all Senators a questionnaire inquiring about their procedures for selecting and recommending potential nominees. By June 1979 the Attorney General had received more than fifty responses.
 
 
 3
 In early 1979 plaintiffs sought FOIA disclosure of questionnaire responses from the Department of Justice, as part of an effort to monitor federal judicial appointments and their inclusion of women, racial minorities, and "public interest" lawyers. The Department of Justice denied disclosure, claiming that the responses were not agency records within the scope of the FOIA and were exempt under FOIA Exemption 5 as pre-decisional advisory material.
 
 
 4
 Plaintiffs filed suit in United States District Court to compel disclosure. On 11 July 1979 the district court, ruling on cross-motions for summary judgment, granted judgment for the Government. The district court held the documents not to be agency records, and thus found it unnecessary to rule on the Exemption 5 issue, which had been briefed and argued. The court also conducted in camera inspection of five randomly selected questionnaire responses. Plaintiffs appealed to this court, and we have taken expedited action to resolve the case before the President's completion of the judicial selection process renders plaintiffs' action futile.
 
 II. THE AGENCY RECORDS ISSUE
 
 5
 In several prior FOIA cases courts have been called upon to determine whether requested documents are "agency records." This issue commonly arises when the requested documents are in the possession of an agency but were created by an entity not defined as an "agency" under the FOIA: Congress, federal courts, outside consultants not in corporations controlled by the government,[2] or the President's immediate personal staff and units in the Executive Office whose sole function is to advise and assist the President.[3] For such cases the FOIA does not specify a test for determining what is an agency record.[4]
 
 A. Standard as to What Is an Agency Record
 
 6
 The straightforward question of who has physical possession of documents has not sufficed, in cases before this court, to define whether documents are agency records.[5] A simple possession standard would permit agencies to insulate their activities from FOIA disclosure by farming out operations to outside contractors. It would also create a severe problem whenever confidential congressional documents or materials from the President's immediate staff come into the possession of an agency, as may occur when Congress oversees and supervises an agency. A standard that automatically made such records subject to FOIA disclosure as soon as they are transferred to agency hands would seriously impair Congress's oversight role.[6]
 
 
 7
 Recognizing these difficulties, this court has adopted a standard more consistent with the intent and general framework of the FOIA disclosure system. Our opinion in Goland v. Central Intelligence Agency[7] examined this issue in the context of a FOIA request for a congressional document that was in the hands of an agency. We adopted a standard of control rather than possession: "whether under all the facts of the case the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides."[8] Under the Goland standard, the court looks at the circumstances under which the document was generated whether it was generated by a non-agency, and how, and why and at the non-agency's intent in transferring the document to the agency. In Goland, Congress's actions generating the document during an executive session of a committee, marking the document "Secret," and transferring it to the CIA solely for internal reference purposes, showed that Congress intended to refrain effective control while the document was in agency hands.[9]
 
 
 8
 Goland follows the structure and intent of the FOIA by determining what entity controls the document and deciding whether that entity is within the category of "agency" defined by the Act. An earlier decision of this court pursued a similar approach, inquiring whether the generation of a document by consultants of the Office of Science and Technology brought it within control of that Office so as to make it a "record," and whether that Office was an "agency" or rather a part of the President's staff.[10] In a more recent case we have again examined whether an agency controlled the documents of an outside entity, in the sense of being involved in the "core planning or execution" of a program, such as to make the documents agency records within the FOIA.[11]
 
 B. Control of the Records in this Case
 
 9
 In the present case, although the requested documents were in the possession of the Department of Justice, the district court concluded that the history and purpose of their generation showed them not to be agency records under the FOIA. The court found that the documents did not belong to and were not within the control of either the Attorney General who possessed them, the Senators who participated in their generation, the state nominating commissions about which they reported, or the President for whose ultimate benefit they were created. Rather, the court found, the documents were the "collective product and property" of all of these entities, none of which were agencies for FOIA purposes. The court concluded that the Attorney General was not an "agency" in this case because he was acting as "counsel and advisor to the President," in furtherance of the President's power to nominate federal judges.[12]
 
 
 10
 We find, on the contrary, that the requested documents are in the control of the Attorney General and the Department of Justice which he heads. The Department possesses the documents; and while this factor is not conclusive on the crucial issue of control, it is certainly relevant. Unless there is evidence of control by some other entity, we must conclude that the Attorney General and his Department control these documents. We find no such evidence. Senators generated these materials at the specific request of the Attorney General, and they gave no indication that they wished to limit his use of them. There are no express or reasonably implied senatorial instructions concerning the Attorney General's disposition of these documents. The Senators gave no indication that their responses were to be treated as secret or sensitive, and nothing in the Attorney General's questionnaire or other circumstances indicated that Senators would have the prerogative to maintain secrecy. On this record we cannot find control by the Senators. Nor have the nominating commissions exercised any degree of control over the documents.
 
 
 11
 Although the documents are for the ultimate benefit of the President in a nominating role that is exclusively his, we find that the Attorney General was acting as an independently controlling entity, and not a mere conduit. The questionnaires solicited responses from Senators at the request of the Attorney General, not the President. In his cover letter enclosed with the questionnaires, the Attorney General stated the independent role he was to play in this process: he was to consider certain factors before making his own recommendations to the President as to judicial nominees. This is an independent exercise of judgment that the Attorney General has traditionally taken in the judicial nomination process. The logical deduction from the facts is that the Attorney General was to control the questionnaire responses for the purpose of carrying out his independent duties. We have no evidence before us that the President in any way diminished the Attorney General's control over these documents; there is no indication that they will ever be transmitted to or seen by the President or his staff. By all indicia of ownership, the documents are within the exclusive control of the Attorney General.
 
 
 12
 C. The Attorney General as Advisor and as Administrator
 
 
 13
 We must next consider whether there is any basis in the FOIA for distinguishing between the Attorney General and the Department of Justice, in such a way that the former is not an "agency" where he functions in a purely advisory capacity to the President. Our analysis must start from the FOIA's definition of agency, which includes "any executive department."[13] There is no basis in this definition or its legislative history to view the Attorney General as distinct from his department for FOIA purposes. On the contrary, it is only reasonable to consider him as much a part of the Department of Justice as any other official or employee in that Department.
 
 
 14
 Since the creation of the Department of Justice in 1870 the Attorney General has always had two roles: advisor to the President and administrator of the Department of Justice. The same dual role would be true, to a greater or lesser extent, of all other Cabinet officers. Whether these documents are agency records raises the question: can any meaningful distinction be made between documents generated and kept in the Department on the basis of the two different roles? And, if so, would the same distinction not apply in all Executive Departments?
 
 
 15
 The Government argues that the questionnaire responses are not agency records because they do not fall out of the sphere of the appointment process into Department of Justice business.[14] The problem with this argument is that the appointment of federal judges has always been a regular business of the Attorney General and his Department. This responsibility was shifted in 1978 to the office of the Associate Attorney General.[15] Shortly before we heard this case on appeal, it was shifted once again, so that responsibility now falls directly on the Attorney General.[16] Whatever the formal channels of responsibility, the task of receiving, processing, and clearing names of judicial nominees has long been a routine function of the Department of Justice.[17] Whether the official responsibility falls directly on the Attorney General, or rather on one of his subordinates, makes no difference to the fact that this function is regular business of the agency.
 
 
 16
 Judicial nominations are by no means unique as an instance where normal agency functions involve some element of giving advice to the President. The entire Office of Legal Counsel, under an Assistant Attorney General, exists to assist the Attorney General in advising the President and Cabinet officers on major legal questions. Thus a substantial number of people, integral parts of the Department of Justice, are there to assist the Attorney General in performing his duty as advisor to the President on a variety of matters. If we broke out all documents connected with these functions as not being "agency records" under the FOIA, we would have a substantial percentage of Department of Justice records that were somehow transformed into the Attorney General's personal records as advisor to the President. This does not appear as either a realistic or intended distinction under the Freedom of Information Act.
 
 
 17
 This conclusion is underscored if we examine the likely results if the Government's theory, adopted by the trial court, were applied to other Executive Departments. For example, in the Department of State a huge portion of the Secretary's functions could be described as advising the President on the conduct of foreign relations, his selection of ambassadors, and utilization of those ambassadors abroad. We could hardly say all the documents in the Department of State relating to the Secretary advising the President were not "agency records," although a substantial percentage of these agency records might well be protected from disclosure by one of the FOIA exemptions.
 
 
 18
 Turning to another argument of the Government to classify the Attorney General as a non-agency in this case, the appellee points to the rule that "agency" does not include the President's immediate personal staff or Executive Office units whose sole function is to advise the President. This rule was set forth in our opinion in Soucie v. David,[18] and endorsed by the Conference Committee Report on the 1974 FOIA Amendments.[19] As expounded in these two sources, however, the rule applies only to the initial decision of whether a unit falls within the category of "agency" for FOIA purposes. Neither Soucie v. David, nor the Committee Report implies that once a unit has been found to be an agency, one of its component parts can nevertheless be treated as a non-agency when engaged in presidential advisory functions.
 
 
 19
 Soucie found that the Office of Science and Technology was an agency, because the Office had functions in addition to advising the President.[20] But the opinion did not intimate that the Office might be an agency only when performing its non-advisory functions, and still be a presidential staff component, or non-agency, when performing its other function of advising the President. In fact, the reports under consideration in Soucie were requested by the President precisely for advisory purposes, but we did not deem the Office to be a non-agency in that specific context.[21]
 
 
 20
 The logical conclusion from the FOIA language and from Soucie is that, depending on its general nature and functions, a particular unit is either an agency or it is not. Once a unit is found to be an agency, this determination will not vary according to its specific function in each individual case. There is an obvious exception where private entities and their documents are controlled by agencies in limited circumstances; there the private entity certainly does not become a government agency irrevocably for all its activities.[22] But we can see no basis for excepting the Attorney General and the Department of Justice; we find they are an agency without respect to their particular functions in individual cases.
 
 
 21
 The Government argues that nomination of judges is a purely presidential function; that had the President himself solicited this information from Senators, their responses to him would be exempt from the FOIA; and that the President's choice to draw the Attorney General into this presidential activity should not make the responses disclosable. Such an approach, defining "agency records" by the purpose for which they exist, would cut back severely on the FOIA's reach as interpreted by courts since its inception. Documents of the Central Intelligence Agency and the National Security Agency are compiled precisely for the function of advising the President in the solely presidential role of Commander-in-Chief. Yet in many FOIA encounters with NSA and CIA, we have never held or seriously considered that they might not be "agencies" when acting in this capacity.
 
 
 22
 As we indicated above, other departments State, Defense come quickly to mind as examples where the Government's argument proves far too much. Many cabinet officers, like the Attorney General, or the Office of Legal Counsel under him, act as advisors to the President for many of their important functions; yet they are not members of the presidential staff or exclusively presidential advisors, and are thus not exempt from FOIA requirements. The Government cites a district court case which held the Pardon Attorney of the Justice Department not to be an agency for FOIA purposes, because his sole function is to advise and assist the President.[23] Whatever the merits of this reasoning yet to be determined in this court we face an easier question in this case because the Attorney General has functions in addition to advising the President. Any unit or official that is part of an agency and has non-advisory functions cannot be considered a non-agency in selected contexts on a case-by-case basis.
 
 
 23
 It is certainly true, as the Government contends, that had the President's staff itself solicited these responses from Senators, the documents would not be agency records. In many different areas the President has a choice between using his staff to perform a function and using an agency to perform it. While not always substantively significant, these choices are often unavoidably significant for FOIA purposes, because the Act defines agencies as subject to disclosure and presidential staff as exempt. To redraw this statutory line in a different manner, based on complex functional considerations, would strain the language of the Act and present much greater complexity in litigation.
 
 III. THE APPLICABILITY OF FOIA EXEMPTION 5
 
 24
 We proceed now to consider whether the requested documents fall within Exemption 5 of the FOIA. The district court did not decide this issue, since it considered the agency records issue a sufficient basis on which to dispose of the case. An appellate court normally does not give consideration to issues that were neither raised nor decided below;[24] in this case, however, the Exemption 5 issue was raised and briefed in summary judgment motions before the district court. On those portions of the Exemption 5 issue that we decide today, we do not believe there is any doubt as to the proper resolution of the case, and the delay of extensive further proceedings in district court could render appellants' efforts futile. Thus it is fully appropriate for us to proceed to the Exemption 5 issue.[25]
 
 
 25
 Exemption 5 applies to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency."[26] Appellants argue that since the documents at issue here were submitted to the Department of Justice by Senators, who are not agencies within the meaning of the FOIA, the documents cannot be termed "inter-agency" or "intra-agency."
 
 
 26
 When interpreted in light of its purpose, however, the language of Exemption 5 clearly embraces this situation. The exemption was created to protect the deliberative process of the government, by ensuring that persons in an advisory role would be able to express their opinions freely to agency decision-makers without fear of publicity.[27] In the course of its day-to-day activities, an agency often needs to rely on the opinions and recommendations of temporary consultants, as well as its own employees. Such consultations are an integral part of its deliberative process; to conduct this process in public view would inhibit frank discussion of policy matters and likely impair the quality of decisions.
 
 
 27
 We start from the proposition that FOIA exemptions are to be interpreted narrowly. The Senate Committee attempted to keep Exemption 5 as narrow as was "consistent with efficient Government operation."[28] Unquestionably, efficient government operation requires open discussions among all government policy-makers and advisors, whether those giving advice are officially part of the agency or are solicited to give advice only for specific projects. Congress apparently did not intend "inter-agency" and "intra-agency" to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process. We cannot overlook the fact that the documents here were generated by an initiative from the Department of Justice, i. e., the questionnaire sent out by the Department to the Senators. The Senators replied to the questionnaire. The questionnaire plus replies must correspond in origin and process to literally millions of documents and memoranda of various kinds on a myriad of subjects which repose in the files of the executive departments and independent agencies, i. e., memoranda which were created by someone outside the executive branch but in response to an initiative from the executive branch.[29] When an agency record is submitted by outside consultants as part of the deliberative process, and it was solicited by the agency, we find it entirely reasonable to deem the resulting document to be an "intra-agency" memorandum for purposes of determining the applicability of Exemption 5. This common sense interpretation of "intra-agency" to accommodate the realities of the typical agency deliberative process has been consistently followed by the courts.[30]
 
 
 28
 Exemption 5 protects only those memoranda which would not normally be discoverable in civil litigation against an agency.[31] The standard of what is discoverable in civil litigation against an agency, as interpreted by the Supreme Court, indicates that purely factual material which is severable from the policy advice contained in a document, and which would not compromise the confidential remainder of the document, must be disclosed in an FOIA suit.[32] This court has further elaborated the standard for determining which segments of an advisory document are disclosable under Exemption 5. We have held that factual segments are protected from disclosure as not being purely factual if the manner of selecting or presenting those facts would reveal the deliberate process,[33] or if the facts are "inextricably intertwined" with the policy-making process.[34] The Supreme Court has substantially endorsed this standard.[35]
 
 
 29
 As an additional ground, appellants argue that advisory material in the questionnaires should be disclosed if it represents a final decision rather than interim advice. Exemption 5 does not apply to final actions of agencies, in the sense of statements of policy and final opinions which have the force of law or which explain actions an agency has already taken.[36] Further, Exemption 5 applies only to communications before the adoption of an agency policy; communications that promulgate or implement an established policy are not privileged.[37] In the present case, however, the communications all precede the adoption of any agency policy i. e., the Attorney General's evaluation of selection processes and transmittal of his own recommendations to the President and also precede the final action on nominations that can only be taken by the President with consent of the Senate. That an individual Senator may have taken final action by deciding which potential nominees he will recommend, as urged by appellants, is not material to whether the documents constitute a final opinion or action of an agency. Hence finality cannot justify disclosure of the questionnaire answers in this case.
 
 
 30
 We conclude that the requested documents are exempt from FOIA disclosure under Exemption 5, except for factual segments which do not reveal the deliberative process and are not intertwined with the policy-making process. On remand the district court will determine which segments are disclosable under this standard. Because expedition is necessary in this case, we comment on those aspects of disclosability that are clear on the record before us.
 
 
 31
 The questionnaires sent by the Attorney General to the Senators asked for the following information:
 
 
 32
 1. Describe the effort which was made to identify qualified candidates.
 
 
 33
 2. Describe the process by which all persons identified and interested were considered?
 
 
 34
 3. How many persons were considered?
 
 
 35
 4. With respect to each person recommended, does he or she meet each of the standards set forth in Section 2 of the Executive Order?
 
 
 36
 5. With respect to each person recommended, submit a copy of any questionnaire or resume of biographical information furnished by that person.
 
 6. If a nominating commission was used:
 
 37
 (a) how was the commission appointed?
 
 
 38
 (b) how many persons were on the commission?
 
 
 39
 (c) how many of the members were female?
 
 
 40
 (d) how many of the members were of a minority race?
 
 
 41
 (e) how many of the members were non-lawyers?
 
 
 42
 Some segments of Senators' responses to these questions will be factual, and disclosure of them will not reveal aspects of the deliberative process. Answers to questions 3 and 6 will clearly be of this nature. Expressions of personal views or recommendations of a Senator, on the other hand, are clearly exempt from disclosure. Other segments of responses may or may not be subject to disclosure, depending on circumstances to be evaluated on remand. Any biographical information of a routine, nonprivate nature, such as would commonly appear in Who's Who or similar reference works, is not inextricably intertwined with the protected deliberative process of making recommendations, and is thus subject to disclosure. Other more probing analysis of a candidate's background, on the other hand, might constitute a specific recommendation of the candidate on grounds of his qualifications and experience, and thus be exempt.
 
 IV. EXEMPTION 6 ISSUE
 
 43
 The Government claims on appeal that some portions of the Senators' responses to the Department questionnaire may be within FOIA Exemption 6, for "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy,"[38] and that the Government should be allowed to raise this exemption upon remand to the district court. The Government did not raise Exemption 6, however, in the original proceedings before the district court.38a This court has held that an agency must identify the specific statutory exemptions relied upon, and do so at least by the time of the district court proceedings.[39] This the Government has failed to do. The danger of permitting the Government to raise its FOIA exemption claims one at a time, at different stages of a district court proceeding, is especially apparent in this case, where any delay through this means could easily render the appellants' claim futile. We therefore hold, in accordance with our en banc decision in Jordan v. U. S. Department of Justice, that the Government may not raise FOIA Exemption 6 upon remand to the district court.
 
 
 44
 As we have noted in Jordan, there is a possible exception to this disqualification, under 28 U.S.C. § 2106, in that the appellate court has discretion to remand the case and " 'require such further proceedings to be had as may be just under the circumstances.' "[40] This could happen in the present case if sensitive, personal private information might be revealed. The Government may of course raise such a claim if warranted at the district court, but only if it can show extraordinary circumstances. On the present record, the need to claim such extraordinary circumstances is diminished by the likelihood that sensitive material bearing on a potential nominee will be intertwined with advice based on his qualifications and experience, and thus come within Exemption 5.
 
 V. CONCLUSION
 
 45
 Since we find the requested documents to be agency records, we must order disclosure of all segments not within specific FOIA exemptions. On remand, the district court will, according to accepted procedures, order the Government to disclose all purely factual material in the responses and to identify those advisory segments protected by Exemption 5.[41] It may then be necessary for the district court to inspect documents in camera to decide if individual segments do properly fall within Exemption 5. The judgment of the district court is vacated and the case remanded for further proceedings in accordance with this opinion.
 
 
 46
 So ordered.
 
 
 
 *
 Sitting by designation pursuant to 28 U.S.C. § 292(a) (1976)
 
 
 [1]
 3 C.F.R. § 254 (1978)
 
 
 [2]
 See 5 U.S.C. § 552(e) (1976)
 
 
 [3]
 See S.Rep.No.1200, 93d Cong., 2d Sess. 15 (1974), U.S.Code Cong. & Admin.News 1974, p. 6267
 
 
 [4]
 44 U.S.C. § 3301 is the only statutory definition of "record," and it is not applicable to the FOIA. See Goland v. Central Intelligence Agency, 607 F.2d 339, 345 n.30 (D.C. Cir. 1978)
 
 
 [5]
 The Ninth Circuit has also rejected the possession standard. See Warth v. Department of Justice, 595 F.2d 521, 522-23 & n.7 (9th Cir. 1979)
 
 
 [6]
 See Goland v. Central Intelligence Agency, 607 F.2d at 346
 
 
 [7]
 607 F.2d 339 (D.C. Cir. 1978)
 
 
 [8]
 Id. at 346-47. See also Cook v. Willingham, 400 F.2d 885 (10th Cir. 1968)
 
 
 [9]
 See Goland v. Central Intelligence Agency, 607 F.2d at 347
 
 
 [10]
 See Soucie v. David, 145 U.S.App.D.C. 144, 150-53, 448 F.2d 1067, 1073-1076 (D.C. Cir. 1971)
 
 
 [11]
 See Forsham v. Califano, 190 U.S.App.D.C. 231, 239, 587 F.2d 1128, 1136 n.19 (D.C. Cir. 1978), cert. granted, 441 U.S. 942, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979). See also Washington Research Project, Inc. v. Department of HEW, 164 U.S.App.D.C. 169, 176-78, 504 F.2d 238, 245-48 (D.C. Cir. 1974), cert. denied, 421 U.S. 963, 95 S.Ct. 1951, 44 L.Ed.2d 450 (1975)
 
 
 [12]
 See Ryan v. Department of Justice, 474 F.Supp. 735, 738-39 (D.D.C.1979)
 
 
 [13]
 5 U.S.C. § 552(e) (1976)
 
 
 [14]
 Brief for Appellee at 12-19
 
 
 [15]
 See Dept. of Justice Order No. 790-78, 43 Fed.Reg. 26,001, 26,002 (1978)
 
 
 [16]
 See Dept. of Justice Order No. 858-79, 44 Fed.Reg. 58,908 (1979)
 
 
 [17]
 As a matter of law we are not called upon to decide whether non-routine documents are outside the scope of the FOIA. But we note that our opinion in Soucie v. David did not purport to place any sharp limitation on the category of "records" when it defined them as materials made in the performance of the ordinary functions of an agency. See 145 U.S.App.D.C. at 153, 448 F.2d at 1076. Cf. Forsham v. Califano, 190 U.S.App.D.C. 231, 239, 587 F.2d 1128, 1136 (D.C. Cir. 1978) (FOIA applies only to record created or obtained by agency "in the course of doing its work"), cert. granted, 441 U.S. 942, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979). While there may be exceptional circumstances that render documents in an agency's possession not "records," this case presents no such situation. Cf. SDC Dev. Corp. v. Mathews, 542 F.2d 1116 (9th Cir. 1976) (agency reference library of medical writings stored in computer bank, and available to public only under a set fee system, deemed not to be agency records)
 
 
 [18]
 145 U.S.App.D.C. 144, 150-53, 448 F.2d 1067, 1073-76 (D.C. Cir. 1971)
 
 
 [19]
 See S.Rep.No.1200, 93d Cong., 2d Sess. 15 (1974). Failure to exempt presidential staff from the FOIA would raise a constitutional issue of separation of powers. See Soucie v. David, 145 U.S.App.D.C. at 157-58, 448 F.2d at 1080-81 (Wilkey, J., concurring)
 
 
 [20]
 See 145 U.S.App.D.C. at 150-53, 448 F.2d at 1073-76
 
 
 [21]
 See id., 145 U.S.App.D.C. at 152-155, 448 F.2d at 1075-76
 
 
 [22]
 See Forsham v. Califano, 190 U.S.App.D.C. 231, 236-41, 587 F.2d 1128, 1133-38 (D.C. Cir. 1978), cert. granted, 441 U.S. 942, 99 S.Ct. 2159, 60 L.Ed.2d 1044 (1979)
 
 
 [23]
 See Stassi v. Department of Justice, No. 78-532 (D.D.C.1979)
 
 
 [24]
 See Hormel v. Helvering, 312 U.S. 552, 556-57, 61 S.Ct. 719, 85 L.Ed.2d 1037 (1941)
 
 
 [25]
 See Singleton v. Wulff, 428 U.S. 106, 121, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)
 
 
 [26]
 5 U.S.C. § 552(b)(5) (1976)
 
 
 [27]
 See H.R.Rep.No.1497, 89th Cong., 2d Sess. 10 (1966); S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965), U.S.Code Cong. & Admin.News 1966, p. 2418
 
 
 [28]
 S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965)
 
 
 [29]
 For example, the Department of Agriculture must have bales of information in response to questionnaires
 
 
 [30]
 See Brockway v. Department of Air Force, 518 F.2d 1184, 1191 (8th Cir. 1975) (statements of witnesses in a military aircraft safety investigation are within Exemption 5); Wu v. National Endowment for Humanities, 460 F.2d 1030, 1032 (5th Cir. 1972) (statements of professors who were not agency employees deemed to be intra-agency memoranda), cert. denied, 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973); Soucie v. David, 145 U.S.App.D.C. 144, 155, 448 F.2d 1067, 1078 n.44 (D.C. Cir. 1971) (materials prepared for an agency by outside experts should be treated as intra-agency memoranda)
 
 
 [31]
 5 U.S.C. § 552(b)(5) (1976)
 
 
 [32]
 See Environmental Protection Agency v. Mink, 410 U.S. 73, 91, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973)
 
 
 [33]
 See Montrose Chem. Corp. v. Train, 160 U.S.App.D.C. 270, 275, 491 F.2d 63, 68 (D.C. Cir. 1974)
 
 
 [34]
 See Soucie v. David, 145 U.S.App.D.C. at 155, 448 F.2d at 1078
 
 
 [35]
 See Environmental Protection Agency v. Mink, 410 U.S. 73, 92, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973)
 
 
 [36]
 See National Labor Relations Board v. Sears, Roebuck & Co., 421 U.S. 132, 153-54, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975)
 
 
 [37]
 See Jordan v. United States Department of Justice, 192 U.S.App.D.C. 144, 165, 591 F.2d 753, 774 (D.C. Cir. 1978) (en banc)
 
 
 [38]
 5 U.S.C. § 552(b) (1976)
 38a In its Petition for Rehearing, the Government points out that it did mention Exemption 6 in one sentence of a footnote to its Memorandum of Points and Authorities submitted to the district court. The purpose of this footnote was to inform the district court that the Government did not wish its assertion of Exemption 5 to be construed as waiving the possible applicability of remaining exemptions under section 552(b), for example Exemption 6. Our opinion in Jordan v. United States Department of Justice, however, requires that the agency raise the exemption by identifying it at the district court level and by demonstrating that the exemption applies to the documents in question. See 591 F.2d at 779. By simply stating that "for example" Exemption 6 might apply, the Government did not meet its burden of demonstrating that the exemption applies. The Government did not assert Exemption 6 as a defense in a manner in which the district court could rule on the issue. Thus the government did not "raise" Exemption 6 at the district court level in the manner required by Jordan.
 
 
 [39]
 See Jordan v. United States Department of Justice, 192 U.S.App.D.C. at 170, 591 F.2d at 779
 
 
 [40]
 Id. 192 U.S.App.D.C. at 171, 591 F.2d at 780 (quoting 28 U.S.C. § 2106 (1976))
 
 
 [41]
 See Vaughn v. Rosen, 157 U.S.App.D.C. 340, 484 F.2d 820 (D.C. Cir. 1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)