**GENERAL ELECTRIC COMPANY,**
**Plaintiff,**

v.

**UNITED STATES ENVIRONMENTAL**
**PROTECTION AGENCY,**
**Defendant.**

**Civil Action No. 98–10613–WGY.**

United States District Court,
D. Massachusetts.

Sept. 29, 1998.

Thomas J. Dougherty, James R. Carroll, David S. Clancy, Skadden, Arps, Slate, Meagher & Flom, Boston, MA, for Plaintiff.

Michael J. Pineault, U.S. Attorney's Office, Boston, MA, for Defendant.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

General Electric Company ("General Electric") continues to press its efforts under the Freedom of Information Act, 5 U.S.C. § 552, to compel the United States Environmental Protection Agency (the "Agency") to produce certain documents related to PCB contamination in Berkhshire County in western Massachusetts, over Agency objections that the documents are protected by one or more statutory exemptions.

In a previous skirmish over the same documents, the Court indicated that it was considering *sua sponte* summary judgment against the Agency due to the inadequacy of its *Vaughn* index. *See General Elec. Co. v. United States Envtl. Protection Agency*, Civil Action No. 98–10613 (D.Mass. May 20, 1998); *General Elec. Co. v. United States Envtl.*

*Protection Agency,* Civil Action No. 98–10613 (D.Mass. April 27, 1998); *see generally Vaughn v. Rosen,* 484 F.2d 820 (D.C.Cir. 1973). The Agency averted this result by expanding and documenting its search for documents covered by General Electric's information request, and by providing additional detail and complete explanations for those documents as to which the Agency claims statutory exemption. The Agency has now produced a revised and consolidated *Vaughn* index listing each of the documents withheld from production and an explanation of the claimed exemptions. As the record now appears complete, and the substantive issues in this matter have been fully briefed, the Court is prepared to proceed on the merits.

■ General Electric's present motion, denominated a Motion to Compel,[1] requests rulings on the Agency's statutory exemption claims relating to internal agency deliberations and law enforcement activities. The Freedom of Information Act, 5 U.S.C. § 552, provides generally for public disclosure of documents and records in the possession of federal executive branch agencies. That policy, however, is subject to a number of exceptions. The Agency has withheld substantial numbers of documents otherwise covered by General Electric's request on the grounds that one or more of these exceptions apply. General Electric lodges two objections to the Agency's exemption determinations. First, the company maintains that 5 U.S.C. § 552(b)(5), the "deliberative process exemption," does not apply to information that has been shared with state administrative agencies, and that any such documents must be produced. Second, the company asserts that 5 U.S.C. § 552(b)(7)(A), the so-called "law enforcement" exception, does not apply to any of the actual or anticipated litigation in this matter, and that any claims of exemption under this provision must therefore be overruled.

1. Exception 5, the Deliberative Process Exemption.

The Agency has withheld under Exemption 5 several documents that have been disclosed to state agencies in both Massachusetts and Connecticut. General Electric asserts that any documents on the *Vaughn* index that have been shared with any state agencies must be produced because any exemption under section 552(b)(5) has been waived.

Exemption 5 protects "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). "[C]ourts have construed this exemption to encompass the protections traditionally afforded certain documents pursuant to evidentiary privileges in the civil discovery context, including materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege." *Dow Jones & Co. v. Department of Justice,* 917 F.2d 571, 573 (D.C.Cir.1990) (as amended) (quoting *Formaldehyde Inst. v. Department of Health & Human Servs.,* 889 F.2d 1118, 1121 (D.C.Cir. 1989) ). Only the application of the "executive deliberative process" privilege is in dispute here. This privilege is grounded on the proposition "that the quality of administrative decision-making would be seriously undermined if agencies were forced to operate in a fishbowl." *Wolfe v. Department of Health & Human Servs.,* 839 F.2d 768, 773 (D.C.Cir.1988) (en banc); *see also Environmental Protection Agency v. Mink,* 410 U.S. 73, 87, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973); S.Rep. No. 813, 89th Cong., 1st Sess. 9 (1965). In order to qualify for this privilege, the Agency bears the burden of showing that the withheld documents are either "interagency or intra-agency" in nature and that they are predecisional and form a part of the Agency's deliberative process. *See, e.g., Wolfe,* 839 F.2d at 774. In addition, the

---

**1.** A motion to compel under Fed.R.Civ.P. 37 is an inappropriate vehicle on the present posture of this case. General Electric's earlier motions for expedited discovery have been denied, and the company has offered no argument that the disclosures it requests are mandated by any of the discovery rules. Rather, the company relies on its arguments on the merits of the case, that the disclosures are required by the Freedom of Information Act. For this reason, the Court treats this motion as one for Partial Summary Judgment under Fed.R.Civ.P. 56.

privilege is waived under certain circumstances if the documents have been disclosed to a third party that is not an agency. *See Shell Oil Co. v. Internal Revenue Serv.,* 772 F.Supp. 202, 209 (D.Del.1991); *Chilivis v. Securities Exch. Comm'n,* 673 F.2d 1205, 1212 (11th Cir.1982). Massachusetts recognizes no such privilege, nor does Connecticut, for all that appears of record in this case.

■ This case thus raises the question whether the retained copies of communications sent from a federal agency to a state agency in the course of a coordinated regulatory effort may be withheld on the basis of the federal executive deliberative process privilege. Because the question falls in the interstices of the decided cases, a brief summary will be helpful. It is clear that a state agency is not an agency within the meaning of the Freedom of Information Act. Sections 551(1) and 552(f) of Title 5 define "agency" as an agency within the Executive branch of the Government of the United States. Applying this definition, it is also clear that the communications at issue under this heading may not be characterized as "inter-agency" in nature. *See Dow Jones,* 917 F.2d at 574.

Alternatively, however, the communications may be "intra-agency" in nature notwithstanding the fact that they have passed back and forth between a federal agency and a state agency. Courts have held that the terms "inter-agency" and "intra-agency" are not rigidly exclusive terms. *See id.; Ryan v. Department of Justice,* 617 F.2d 781, 790 (D.C.Cir.1980). For example, in *Ryan,* the court held that a questionnaire distributed by the Justice Department to every United States Senator was an "intra-agency" document, despite the fact that it had physically left the Department and was thereby disclosed to non-agency personnel. Because agencies often need to rely on the "opinions and recommendations of temporary consultants," those consultations constitute "an integral part of [the agency's] deliberative process" and are thus "intra-

agency" in character. *Ryan,* 617 F.2d at 789–90; *see also Formaldehyde Inst.,* 889 F.2d at 1125 (holding that Exemption 5 covered letter from professional journal reviewing scholarly article submitted by agency).

It has also been held, and General Electric concedes, that a document memorializing face-to-face discussions between agency staff and outside consultants may be withheld, so long as the document itself has not been disclosed to anyone outside the agency. *See United States v. Allsteel, Inc.,* Civ. A. No. 87–C–4638, 1988 WL 139361, *1–2 (N.D.Ill. Dec.21, 1988); *Mobil Oil Corp. v. Federal Trade Comm'n,* 406 F.Supp. 305, 314–15 (S.D.N.Y.1976) *modified,* 430 F.Supp. 849 (S.D.N.Y.1977). As the Court in *Mobil Oil* stated, the rationale behind protecting outside advice "applies with equal force to advice received from state as well as federal agencies." *Mobil Oil,* 406 F.Supp. at 315. General Electric insists, however, that only consultant input is privileged, and that any output from the federal agency to a non-federal agency constitutes a waiver.

This argument leads the Court to consider the particular circumstances under which the consultations between the federal Agency and state agencies were conducted in this case. General Electric has taken the position in a related administrative appeal that the Agency must coordinate its remediation efforts with the states affected in order to avoid duplicative and inconsistent requirements, and that such coordination should include the sharing of draft documents and comments among state and federal agencies.[2] The Agency later entered into a Memorandum of Understanding to this effect with both Massachusetts and Connecticut. *See* Supplemental Affidavit of Douglas J. Luckerman ¶¶ 3–5.

In these circumstances, there is no broadly applicable state-federal "co-regulatory" privilege, nor does Exemption 5 contemplate one.

---

2. The Court declines to apply the doctrine of estoppel as urged by the Agency. It is neither inconsistent nor inequitable for General Electric to argue in one proceeding that the Agency is required to coordinate with the states, and to argue in a subsequent proceeding that such coor-

dination undermines the Agency's privilege arguments. If the law requires both coordination and disclosure, then so be it. The Court will not estop General Electric from advancing this position.

The cloak of privilege is not to be drawn over all state documents that happen to find their way into federal files, even if federal decision makers use the documents in formulating federal policy. The Massachusetts policy that opens its executive deliberative processes to public scrutiny is here entitled to weight equal to the federal policy that closes such files to its citizens. The two must coexist in harmony, insofar as possible. On the other hand, merely sending a federal document to a state agency and retaining a copy does not automatically operate as a waiver of privilege as to that copy.

■■■ The boundaries of the federal executive deliberative process privilege in this co-regulatory situation extend only so far as is necessary to protect actual federal deliberative processes. This means that when the federal agency **asks** the state agency for data, either directly or by necessary implication, and then **uses** the data received, so much of any document received as will reveal the federal deliberative process is privileged. Moreover, if the state documents form a series or are otherwise inter-related such that revealing those not used will necessarily point to the withheld document or documents as the ones on which reliance was placed and thus reveal the federal deliberative process, then so much of the series may be withheld as is necessary to prevent a logical deduction of the process. In such circumstances, the state agency is functionally a consultant for the federal agency and its unprivileged documents—when transmitted to the federal agency—become privileged intra-agency documents if actually used by the federal agency in its deliberative processes.

■■■ Likewise, the federal copies of its agency requests for data, if revelatory of federal deliberative processes, do not lose their privileged status when transmitted to the state "consultants." [3] Indeed, letters from a federal agency to a state agency that solicit or respond to the state agency's input in an effort to coordinate and tailor joint regulatory efforts may be no less a part of the federal agency's deliberative processes than the state agency's recommendations or advice when acted on at the federal level. If disclosure of such letters reveals the internal decision-making processes of the federal agency, "inhibit[s] frank discussion of policy matters [by federal regulators] and [is] likely impair the quality of [their] decisions," *Ryan*, 617 F.2d at 789–90, such documents may be withheld as privileged.

Here, the privilege is limited, as in all Exemption 5 cases, to those predecisional documents which actually reflect the federal agency deliberative process. Letters or documents that merely inform state agencies of the status of federal regulatory efforts or announce federal policy do not fall within the exemption. Only when the state agency is, in effect, drawn into the deliberative process and consulted as to the outcome does the exemption apply.

This rule is somewhat more restrictive though broadly consistent with the well-reasoned decision in *Chemcentral/Grand Rapids Corp. v. Environmental Protection Agency*, No. 91–C–4380, 1992 WL 724965 (N.D.Ill. Aug.20, 1992), *Magistrate's report and recommendation adopted*, 1992 WL 281322 at *3 (Oct. 6, 1992). That case involved communications between the Environmental Protection Agency and the Michigan Department of Natural Resources regarding the federal Agency's remediation plan under CERCLA. The Agency was required to consult with and consider the views of the state agency in deliberating on the final course of action. *See Chemcentral/Grand Rapids*, 1992 WL 724965 at *12. Under these circumstances, the court held Exemption 5 applicable to documents authored by the federal agency and sent to the state agency, as well as documents sent by the state agency to the federal agency. *See id.* at *15–16.[4]

3. The Court need not, and does not, express an opinion concerning the status of these federal documents if located and demanded from the state agency files.

4. General Electric asserts that all documents in *Chemcentral/Grand Rapids* deemed privileged under Exemption 5 were received by the federal agency from a state agency, and that no documents disclosed to the state agency by the federal agency were so privileged. This assertion is erroneous. At least two documents, numbered 5 and 17 on the *Vaughn* index and in the *Chemcentral/Grand Rapids* decision, are specifically identified as letters from the EPA to the state agency.

General Electric cites *United States v. Metropolitan St. Louis Sewer District*, 952 F.2d 1040 (8th Cir.1992), for the proposition that "the release of a draft consent degree, drafted by the federal government and released to the State and the [Sewer District] (which are not federal government agencies), constitutes a waiver" of the deliberative process privilege. *Id.* at 1045 n. 2. The company insists that this ruling forecloses the application of privilege in this case. On the contrary, *St. Louis Sewer* held that the waiver inquiry is fact specific, and remanded for an appropriate determination by the District Court. The dicta cited by General Electric appears to stand for the much narrower proposition that documents released to adverse parties in litigation cannot be shielded from the public or from other litigants by the Exemption 5 privilege.[5] This rule simply comports with the statutory provision that Exemption 5 protects only documents not available to parties in litigation with the Agency. *See* 5 U.S.C. § 552(b)(5). It does not appear on the record that any such litigation between state and federal agencies is ongoing or has occurred in this case.

As in *Chemcentral*, the Agency in this case is obligated to consult with state agencies when implementing its response under CERCLA. Communications between the state and federal agencies under these circumstances, so long as they meet the requirements of the rule set forth above, and regardless of whether they are directed to or issued by the federal agency, fall within the Exemption 5 privilege. General Electric's motion is therefore denied insofar as it relies on disclosure to state entities to defeat Exemption 5.

2. Exemption 7(A), the Law Enforcement Exemption.

█ The Agency has withheld pursuant to Exception 7(A) a number of documents that it maintains were compiled for law enforcement purposes. Exemption 7(A) allows the Agency to withhold such materials to the extent that disclosure "could reasonably be expected to interfere with enforcement proceedings." 5 U.S.C. § 552(b)(7)(A). The gravamen of General Electric's challenge is that none of the proceedings currently under way or reasonably anticipated under the CERCLA regime are in the nature of enforcement proceedings, and that Exemption 7(A) therefore does not apply.

It is well established that Exemption 7 "applies to civil and regulatory proceedings as well as to criminal matters." *Pope v. United States*, 599 F.2d 1383, 1386 (5th Cir. 1979). Moreover, Exemption 7 has been interpreted to cover such enforcement proceedings whether they are "pending or reasonably anticipated." *Mapother v. Department of Justice*, 3 F.3d 1533, 1540 (D.C.Cir. 1993). It is also immaterial whether the "enforcement action" is initiated by the government, as in a criminal prosecution, or is initiated by a third party, as in an administrative challenge to a unilateral agency action. *See Mapother*, 3 F.3d at 1541. The test is whether the requested documents "relate to anything that can fairly be characterized as an enforcement proceeding." *Bristol–Myers Co. v. Federal Trade Comm'n*, 424 F.2d 935, 939 (D.C.Cir.1970).

As an initial matter, General Electric is correct that the decision whether or not to list the Housatonic River site on the CERCLA National Priorities List is not an enforcement action at all but rather ordinary informal rulemaking. Indeed, any challenge to that listing would merely lead to a judicial determination of the validity of the rule. General Electric is an affected private party, but neither the rulemaking nor a challenge to the outcome would involve an enforcement of the company's rights or obligations under the law. Rather, those rights or obligations would be established in subsequent administrative actions. *See In re Acushnet River & New Bedford Harbor: Proceedings re Alleged PCB Pollution*, 712 F.Supp. 994, 995–997

Exemption 5 was held to apply to both. General Electric's protestation that no objection was lodged against the Magistrate's report as to document 17 is unavailing.

**5.** The authorities cited in footnote 2 all deal with disclosures in the course of litigation, and the Environmental Protection Agency was indeed engaged in litigation with the Sewer District and the state of Missouri in that case.

(D.Mass.1989) (providing a brush stroke explanation of the progression of remedial and enforcement actions under CERCLA). As to the listing itself, the Agency has not established the applicability of Exemption 7.

As to potential subsequent actions, however, it is entirely reasonable for the Agency to anticipate that enforcement proceedings are in the offing. For example, the Agency has issued orders under CERCLA § 106, 42 U.S.C. § 9606, directing General Electric to abate imminent environmental harm, and anticipates the need to issue further orders under this or similar authority. *See* Affidavit of Douglass Luckerman ¶¶ 43–48. Although General Electric disputes the characterization of the order itself as an enforcement action, section 9606(b) specifically provides for enforcement and substantial civil penalties, and it is not unreasonable to anticipate the necessity of resort to that provision. "Despite other possible outcomes . . . an enforcement proceeding is in prospect." *Ehringhaus v. Federal Trade Comm'n*, 525 F.Supp. 21, 23 (D.D.C.1980).

Similarly, an action to recover natural resource damages pursuant to 42 U.S.C. § 9606(a)(4)(C) & 9606(f) is an action to enforce the provisions of CERCLA, notwithstanding General Electric's insistence that such liability is for civil damages only. General Electric cites no authority for the proposition that civil damages actions are not enforcement proceedings under Exemption 7.[6] Indeed such actions comprise the basic enforcement structure of CERCLA. *See* 42 U.S.C. §§ 9601 *et seq.; Acushnet River*, 712 F.Supp. at 995.

Although the decision to list the General Electric site on the CERCLA National Priorities List is not itself an enforcement action, the Agency has a reasonable expectation that enforcement actions of the kind discussed above will ultimately ensue. For that reason, General Electric's Motion to Compel is denied insofar as it relies on a blanket rejection of the Agency's Exemption 7(A) claims.

3. Next steps.

Upon the grounds discussed above, the Court has delineated the applicable deliberative process privilege. It applies to a class of documents sought to be discovered by General Electric, albeit more narrowly than the Agency would wish. The Agency's understanding of the law enforcement privilege is upheld. The matter is not, however, at an end. Although, as the Court has noted, the *Vaughn* index appears to be complete, in order to apply the teaching of this opinion to the specific documents in question, the Agency may wish to make certain disclosures or further supplement the *Vaughn* index. The Court does not anticipate a trial on this matter, and awaits the filing of appropriate dispositive motions in short order so that this case may be concluded. Any such motion based upon a withholding pursuant to exemption 5 shall explain, on an item by item basis, precisely how the deliberative process privilege explained herein applies to that document. The Agency's objections to producing particular documents pursuant to exemption 7 are sustained.

---

**6.** Its reliance on the holding in *Acushnet River* that actions for recovery of natural resource damages under subparagraph (C) sound in tort and are triable to a jury is inapposite. Tort actions may be characterized as enforcement proceedings under Exemption 7. The exemption "is not limited solely to criminal law enforcement but rather applies to law enforcement activities of all natures." *Clement Bros. Co. v. NLRB,* 282 F.Supp. 540, 542 (N.D.Ga.1968).