**CHURCH OF SCIENTOLOGY OF CALIFORNIA, a Nonprofit Corporation, Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants.**

**No. CV 74–3550–F.**

United States District Court,
C. D. California.

April 2, 1976.

Joel Kreiner, Los Angeles, Cal., Leonard Unger, Levine & Krom, Beverly Hills, Cal., for plaintiff.

William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civil Div., James Stotter II, Asst. U. S. Atty., Los Angeles, Cal., for defendants.

## MEMORANDUM OPINION

FERGUSON, District Judge.

This case raises the question of whether the 1974 amendments to the Freedom of Information Act permit non-disclosure of confidential information supplied to the Drug Enforcement Agency by foreign, state, and local law enforcement agencies.

The government defendants produced a series of witnesses who testified that information provided from one law enforcement agency to another law enforcement agency is given on the understanding that it will not be revealed to members of the general public without the prior approval of the providing source. The witnesses testified that foreign, state, and local law enforcement agencies would be reluctant to disclose information to any federal agency if the Freedom of Information Act jeopardized the confidentiality of their information. Among the witnesses were Chief Rocky Pomerance, the Chief of Police of Miami Beach, Florida, and immediate past president of the International Association of Chiefs of Police; David C. Dilley, Commander, Metropolitan Police and Intelli-

gence Branch, Scotland Yard, London, England; and Francois Le Mouel, Controller General, French National Police Chief, French Bureau of Narcotics, Paris, France.

The plaintiff Church of Scientology contends that the Congress intended that confidential information provided by law enforcement agencies must be produced under the Act. The plaintiff argues that since it does not condone or tolerate the use of drugs, since it has promoted programs which combat the use of drugs, and since it is not involved in drug or narcotic trafficking, no valid governmental interest supports non-disclosure. Although the government does not contest the fact that the plaintiff is an opponent of drug trafficking, it contends that the Act, nonetheless, permits non-disclosure. The government is correct.

## Background

1. On December 4, 1974 the Church of Scientology of California filed an action pursuant to the provisions of the Freedom of Information Act, 5 U.S.C. § 552, naming the United States Department of Justice, the Attorney General of the United States, and the Drug Enforcement Administration as defendants.

2. Jurisdiction was founded on 5 U.S.C. § 552(a)(3) on the ground that the action was one to enjoin an agency from withholding agency records and to order the production of agency records alleged to have been improperly withheld.

3. Since the plaintiff maintains its principal place of business in the Central District of California, venue in this district was properly based upon 5 U.S.C. § 552(a)(3).

4. The plaintiff has exhausted its administrative remedies under 5 U.S.C. § 552 and the regulations promulgated thereunder by the defendant Department of Justice.

5. The parties stipulated that the amendments to the Freedom of Information Act, 5 U.S.C. § 552(b), which became effective on February 19, 1975, were to be deemed effective and fully applicable to this action.

6. The Drug Enforcement Agency at various times released numerous documents to the plaintiff[1] but a dispute over the propriety of the Agency's decision to withhold fifteen documents in their entirety and portions of nine other documents necessitated a trial on January 7–9, 1976, and an *in camera* hearing on January 12, 1976.

7. The defendants claim multiple exemptions under 5 U.S.C. § 552(b) with respect to each of the fifteen documents that were wholly withheld. They invoke the (b)(7)(C)[2] and (b)(7)(D)[3] exemptions with respect to all fifteen documents, the (b)(7)(A)[4] exemption with respect to ten of the documents, the (b)(7)(F)[5] exemption with respect to five of the documents, the (b)(2)[6] exemption with respect to four of the documents, the (b)(5)[7] exemption with respect to two of

---

1. The parties dispute as to why these documents were released. The question may be of importance in determining the assessment of litigation costs and the propriety of an award of attorneys' fees to the plaintiff. The court will retain jurisdiction to determine these questions in subsequent proceedings.

2. 5 U.S.C. § 552(b)(7) exempts: "investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforce-

ment authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel."

3. See footnote 2.

4. See footnote 2.

5. See footnote 2.

6. 5 U.S.C. § 552(b)(2) exempts matters "related solely to the internal personnel rules and practices of an agency."

7. 5 U.S.C. § 552(b)(5) exempts matters that are "inter-agency or intra-agency memoran-

the documents, and the (b)(1)[8] exemption with respect to one of the documents.

8. With respect to the nine documents in which partial excisions were made, the defendants contend that the (b)(7)(C)[9] and (b)(7)(D)[10] exemptions apply to material in each of the nine documents, the (b)(7)(F)[11] and (b)(2)[12] exemptions to material in seven of the documents, and the (b)(7)(A)[13] exemption to a portion of one document.

9. During the course of the trial, the plaintiff indicated that it did not seek access to the internal routing procedures, administrative markings, or the names of law enforcement personnel contained in the documents.

10. Each of the documents was examined by the court *in camera* and testimony concerning each of them was taken *in camera*. The descriptions provided by the defendants were found to be accurate. Some of the material was found to have been improperly withheld, and after the court indicated its views during the *in camera* proceeding, the defendants agreed to disclose those brief portions of the material which had been improperly withheld. This is not to imply that any of the material examined *in camera* was withheld in bad faith. Applying the Freedom of Information Act exemptions can be a complicated and tedious task. It often requires line by line examination of the documents and the making of subtle judgments.

11. The court finds that the balance of the material was properly withheld. In all those instances in which the government claims that the (b)(7)(D) exemption justified exclusion of the entire document, the claim was well taken.

The materials involved are criminal investigatory records compiled for law enforcement purposes given under conditions of confidentiality. Since the (b)(7)(D) exemption is applicable, it is unnecessary to determine the validity of the other government claims with respect to those documents. As to the other documents, the court finds that the exemptions relied upon were properly invoked with the exception of the material which the defendants agreed to release during the course of the hearing *in camera*. The only issue requiring extended discussion is the scope of the (b)(7)(D) exemption.

### Discussion

The Freedom of Information Act (5 U.S.C. § 552) was signed into law by President Johnson on July 4, 1966. The basic philosophy of the Act was well stated by the President in his bill signing statement: "[A] democracy works best when the people have all the information that the security of the Nation permits. No one should be able to pull curtains of secrecy around decisions which can be revealed without injury to the public interest." Thus the Act required that government records be made available to the public subject only to nine exceptions. The seventh of these exceptions, as it was originally enacted, provided that an agency was permitted to refuse disclosure of "investigatory files compiled for law enforcement purposes except to the extent available by law to a party other than an agency." 5 U.S.C. § 552(b)(7)

In response to what the House Committee on Government Operations described as "years of foot-dragging by the Federal bureaucracy" (Committee on

---

dums or letters which would not be available by law to a party other than an agency in litigation with the agency."

8. 5 U.S.C. § 552(b)(1) exempts matters "specifically authorized under criteria established by an Executive order to be kept secret in the interest of national defense or foreign policy . . . and are in fact properly classified pursuant to such Executive order."

9. See note 2.

10. See note 2.

11. See note 2.

12. See note 6.

13. See note 2.

Government Operations & Committee on the Judiciary, 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502), at 8 (Joint Comm. Print 1975) (hereinafter "Legislative History")), on November 21, 1974, the Congress, overriding a Presidential veto, enacted a series of amendments to the Act. The amendments in general were designed to undermine governmental secrecy and to strengthen public disclosure without sacrificing legitimate interests in confidentiality. In particular, Michigan Senator Phillip Hart proposed and Congress passed an amendment which was designed to promote fuller disclosure of information contained in the files of law enforcement agencies without sacrificing legitimate law enforcement needs for confidentiality. Senator Hart was particularly concerned with the effects of a series of decisions of the District of Columbia Court of Appeals (*id.* at 349) which had erected formidable barriers to the disclosure of any information in the files of a law enforcement agency. *See Center for National Policy on Race and Urban Issues v. Weinberger*, 163 U.S.App.D.C. 368, 502 F.2d 370 (1974); *Ditlow v. Brinegar*, 161 U.S. App.D.C. 154, 494 F.2d 1073 (1974); *Aspin v. Department of Defense*, 160 U.S. App.D.C. 231, 491 F.2d 24 (1973); *Weisberg v. United States Department of Justice*, 160 U.S.App.D.C. 71, 489 F.2d 1195 (1973). Those decisions held that if investigatory files were initially compiled for law enforcement purposes they were immune from required disclosure under the Act whether or not any legitimate law enforcement purpose or interest in secrecy remained.[14] *See, e.g., Center for National Policy Review on Race and Urban Issues v. Weinberger, supra,* 502 F.2d at 372.

Senator Hart believed that the courts had erred in not balancing the relevant interests involved. Legislative History, *supra,* at 349. However, instead of requiring or permitting the courts to engage in a process of *ad hoc* balancing, he introduced an amendment which itself sought to balance the relevant interests. *Id.* As enacted, the amendment provides that the Act's disclosure requirements do not apply to

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication, (C) constitute an unwarranted invasion of personal privacy, (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source, (E) disclose investigative techniques and procedures, or (F) endanger the life or physical safety of law enforcement personnel.

▆ Thus it is not the court's responsibility to balance the equities and to determine whether its subjective appreciation of the relevant policies dictates disclosure.[15] The Act does not grant the courts general supervisory power to control the performance of executive agencies. Congress has struck the policy balance (see Legislative History, *supra,* at 300, 334, 349). The judicial task is to discern the intent of Congress and to apply it to the documents.

---

**14.** The only exception to this policy was that provided for in the language of the statute itself, "except to the extent available by law to a party other than an agency." 5 U.S.C. § 552(b)(7). That exception was narrowly construed. *Weisberg v. United States Department of Justice, supra,* 489 F.2d at 1203 n.15.

**15.** If the court were required to balance the equities, much more disclosure would have been required. The bulk of the information is innocuous, sometimes even silly. The Act, however, permits the defendants to withhold information provided by confidential sources even if that information is innocuous and even if the revelation of that information could not possibly reveal the source.

The Act clearly states that confidential information furnished by a confidential source compiled in the course of a criminal investigation is not to be revealed. Congress feared that the revelation of even apparently innocuous information might inadvertently reveal the identity of confidential sources. Moreover the Congress believed that potential sources would fear that disclosure of information would reveal their cooperation and that such sources would be discouraged from cooperating. Thus the Joint Explanatory Statement of the Committee of Conference explained that "[W]here the records are compiled by a criminal law enforcement authority, *all* of the information furnished only by a confidential source may be withheld if the information was compiled in the course of a criminal investigation." *Id.* at 230 (emphasis in original).

The plaintiff contends that the term "source" refers exclusively to people, not to entities such as law enforcement agencies. The defendants maintain that the term source includes any provider of confidential information.

The term source is not defined in the Act, and it appears that the issue was not precisely addressed in the legislative history. The Joint Explanatory Statement of the Committee of Conference in discussing its substitution of the term "source" for "informer" stated that:

The substitution of the term "confidential source"[16] in section 552(b)(7)(D) is to make clear that the identity of a *person* other than a paid informer may be protected if the *person* provided information under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred. *Id.* at 230 (emphasis added).

Whether the use of the term person was meant to exclude non-human sources is not explained. Other portions of the legislative history suggest that the legislator's focus was upon human sources. For example, Senator Kennedy, the prime sponsor of the amendments in the Senate, at one point, stated that, "[W]e also provided that there be no requirement to reveal not only the identity of a confidential source, but also any information obtained from *him* in a criminal investigation." *Id.* at 459 (emphasis added).

■ Assorted grammatical nuances, however, are no substitute for an assessment of what interpretation the legislature would have given the term source if the issue involved here had been presented at the time of passage. A recognition of the overall purpose of the amendment and the political realities surrounding its passage make it unmistakably clear that the term source means source, not human source.

The opponents of the Hart amendment feared that the disclosure of law enforcement records would undermine confidentiality. In response to those concerns, the term source was substituted for informer in order to "provide a wider degree of protection." *Id.* at 459. Despite that substitution and other accommodations, President Ford vetoed the bill, in part because he believed that "confidentiality would not be maintained." *Id.* at 484. In response to the attacks, the sponsors of the amendments assured the Congress that, "We have been most careful to protect . . . law enforcement interests to the utmost in the bill we passed." *Id.* at 440. In order to secure an override of the Presidential veto, it was necessary to convince the legislature and the public that no legitimate law enforcement interest had

---

**16.** The plaintiff contends that since it is well known that law enforcement agencies cooperate with each other, they cannot be considered *confidential* sources. The Attorney General's Memorandum on the 1974 Amendments to the Freedom of Information Act exposes the error of this position: "[T]he test, for purposes of the provision, is whether he was a confidential source with respect to the particular information requested, not whether all connection between him and the agency is entirely unknown." Legislative History, *supra*, at 520.

been compromised. Most persuasive in this regard was the statement of Senator Hart in his effort to sustain an override of the President's veto:

> The major change in conference was the provision which permits law enforcement agencies to withhold "confidential information furnished only by a confidential source." In other words, the agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential source. The President is therefore mistaken in his statement that the FBI must prove that disclosure would reveal an informer's identity; *all the FBI has to do is to state that the information was furnished by a confidential source and it is exempt.*[17] *Id.* at 451 (emphasis added).

Again Senator Hart told the Congress that, "One of the reasons given by the President for his veto is that the investigatory files amendment which I offered would hamper criminal law enforcement agencies in their efforts to protect confidential files. We made major changes in the conference to accommodate this concern." *Id.* at 450–51.

▮ Thus the sponsors of the amendments, and the Congress following in step, believed that the Hart amendment would protect the confidential files of law enforcement. There was no argument raised to support the proposition that confidential information provided by law enforcement agencies was any less important to the mission of federal law enforcement than information provided by ordinary citizens. In light of the legislative history, it is clear that the Congress did not intend to throw open the confidential files of law enforcement to the general public, and its intent to protect against disclosure of confidential information extends to material provided by any confidential source including law enforcement agencies.[18]

▮ The court therefore holds that the (b)(7)(D) exemption is applicable to law enforcement agency sources. Pursuant to the provisions of Rule 52(a) of the Federal Rules of Civil Procedure, this opinion shall constitute the findings of fact and conclusions of law of the court.

Pursuant to 28 U.S.C. § 1291 and Rules 58 and 79(a) of the Federal Rules of Civil Procedure, a judgment shall be entered as follows:

It is adjudged and decreed that:

(1) The defendants are entitled to withhold the material still at issue in this litigation.

▮ (2) The court retains jurisdiction for the purpose of determining which of the parties has "substantially prevailed" and to determine awards of costs and attorneys' fees. Such determinations shall be made after the disposition of appeals in this case.

---

17. The defendants maintain that since they have declared this material to be derived from confidential sources a contrary finding by this court is not permitted. The issue need not be decided since the court finds that the material was provided by confidential sources.

18. Thus it is not necessary to score the debator's point that information emanating from law enforcement agencies would necessarily come from people in the agencies who would qualify as sources even if the term source were confined to human sources. Nor is it necessary to dwell on the irony that if a contrary result obtained, the Freedom of Information Act, which purports to operate only against federal agencies, would have the effect of revealing confidential information contained in the files of foreign, state, and local governments.