**CONOCO, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant.**

**CONOCO, INC., Plaintiff,**

v.

**UNITED STATES DEPARTMENT OF ENERGY, Defendant.**

Civ. A. Nos. 80–418, 80–515.

United States District Court, D. Delaware.

Sept. 11, 1981.

---

Charles S. Crompton, Jr. and Richard E. Poole of Potter, Anderson & Corroon, Wilmington, Del., Donald B. Craven, Mark L. Evans, Robert K. Huffman and James P. Tuite of Miller & Chevalier, Washington, D. C., and David M. Francis, Houston, Tex., for plaintiff.

James W. Garvin, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., John C. Keeney, Acting Asst. Atty. Gen., Lawrence Lippe, Benjamin C. Flannagan, IV and Daniel Friedman, U. S. Dept. of Justice, Washington, D. C., for United States Dept. of Justice.

James W. Garvin, Jr., U. S. Atty., Peggy L. Ableman, Asst. U. S. Atty., Wilmington, Del., Alice Daniel, Asst. Atty. Gen., Larry P. Ellsworth and S. Lamont Bossard, Jr., U. S. Dept. of Energy, Paul M. Geier and William L. Fang, Washington, D. C., for defendant United States Dept. of Energy.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This case raises issues concerning the scope of Exemptions Five and Seven to the general disclosure requirements of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1976). The Court has jurisdiction, pursuant to 5 U.S.C. § 552(a)(4)(B), to make a *de novo* review of two agencies' decisions to withhold documents from plaintiff Conoco, Inc. ("Conoco").

Plaintiff Conoco filed written requests with defendants Department of Energy ("DOE") and the Department of Justice seeking access of all documents relevant in

a criminal investigation conducted by the agencies. Both agencies have refused to honor all of Conoco's requests, contending that portions of the investigatory file are exempt from disclosure under two provisions of 5 U.S.C. § 552(b). There being no material facts in issue, the parties have filed cross motions for summary judgment pursuant to Rule 56, F.R.Civ.P. This Court finds that all but one of the documents are exempt from disclosure under the FOIA. Accordingly, this Court denies Conoco's Motion for Summary Judgment against the DOE and grants DOE's Cross Motion. It grants Conoco's Motion for Summary Judgment against the Department of Justice as to one document, but denies it to the other six documents. Finally, this Court grants the Department of Justice's Cross Motion against Conoco as to six of the seven documents and denies it for the seventh.

## I. BACKGROUND

A. *The Department of Justice and DOE's Investigation of Conoco.*

On March 17, 1977, DOE's predecessor agency, the Federal Energy Administration ("FEA"), instituted an investigation after Conoco revealed to FEA that its own internal investigation had led to information suggesting that during 1973 and 1974 certain of its employees had participated in a scheme to circumvent petroleum price controls originally promulgated by the Cost of Living Council. DOE's investigation resulted in the referral of the case in July, 1977, to the Department of Justice for criminal prosecution. That prosecution resulted in a federal grand jury's returning indictments on August 11, 1978, against Conoco and two of its corporate customers on charges of making false record entries under 18 U.S.C. § 1001 (1976) and intentionally selling and buying oil at prices in excess of those permitted by the price regulations. On August 11, 1978, Conoco entered pleas of *nolo contendere* to one felony and one misdemeanor

count and was fined $15,000. *United States of America v. Continental Oil Co.,* Criminal Action No. H–78–126 (S.D.Texas). Conoco further agreed in a consent order to repay two million dollars in alleged overcharges as well as to pay civil penalties of $985,000.

B. *Conoco's Request Pursuant to the FOIA.*

On March 23, 1979, Conoco filed a written request seeking access to, and copies of, all documents in DOE's possession that related to the investigation by DOE and the Department of Justice of Conoco's sales of refined petroleum products to two resellers. On April 2, 1979, DOE acknowledged receipt of Conoco's request, but did not respond to the request until October 25 and November 5, 1979. On these latter dates DOE provided Conoco with indices of approximately 125 documents or portions thereof that DOE claimed were exempt from disclosure. DOE thereafter revised its index on August 15, 1980. On October 22, 1980, Conoco instituted action in this Court seeking disclosure of those documents.[1] On January 15, 1981, DOE again revised its index. Conoco presently is challenging the DOE's withholding of the twenty-seven documents in its possession.[2]

On July 31, 1980, Conoco filed a written request with the Criminal Division of the Department of Justice requesting access to, and copies of, all documents in the Criminal Division's possession that related to the Justice Department's investigation of Conoco's sales refined petroleum products to two resellers. Conoco received no response to its request and subsequently, on August 25, 1980, brought suit against the Department of Justice in this Court seeking an order requiring the Department to produce the requested documents.[3] On September 24, 1980, the Department identified 13 documents as responsive. The Department released six of these documents, but withheld the seven remaining documents.[4] It is

---

1. Civil Action No. 80–515.

2. The documents that have been withheld include document designations 37–63. *See* Civil Action No. 80–515 (Docket Item ["D.I."] 9 at 100–167).

3. Civil Action No. 80–418.

4. The documents are designated as Document Nos. 1–7, Schedule II. *See* Civil Action No. 80–418 (D.I. 13, ¶ 6).

these latter seven documents that Conoco now seeks. Conoco's actions against the governmental agencies were consolidated for purpose of oral argument.

## II. DISCLOSURE UNDER FOIA

The basic principles of the FOIA are well established. Congress enacted the Act for the express purpose of increasing disclosure of government records. The statute reflects "a general philosophy of full agency disclosure" and protects the public's right to know the operations of its government. H.Rep.No.1497, 89th Cong., 2nd Sess. 6 (1966), *quoted in EPA v. Mink*, 410 U.S. 73, 80 n. 6, 93 S.Ct. 827, 832–33 n.6, 35 L.Ed.2d 119 (1973). It was designed "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose v. Department of Air Force*, 495 F.2d 261, 263 (C.A.2, 1974), *aff'd*, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976). Government files, therefore, must be provided to the public on request unless there are compelling reasons for nondisclosure. *Founding Church of Scientology of Washington D.C. v. Bell*, 603 F.2d 945, 949 (C.A. D.C.1979).

■ Despite the strong policy favoring disclosure, FOIA does not command the disclosure of all government records. Congress realized that some secrecy is necessary for the government to function effectively. Consequently, the second part of the statute—subsection (b)—enumerates nine categories of records that are exempt from the Act's disclosure requirements. 5 U.S.C. § 552(b). *Jordan v. United States Department of Justice*, 591 F.2d 753, 756 (C.A.D.C.1978). These limited exceptions "do not obscure the basic policy that disclosure, not secrecy, is the dominant object of the Act." The nine enumerated exemptions are "exclusive" and "must be narrowly construed." Accordingly, when the government declines to disclose a document, the burden is upon the agency to prove *de novo* in the trial court that the documents sought fit under one of the exemptions to the FOIA.

The DOE and the Department of Justice collectively claim that 5 U.S.C. § 552(b)(5),

7(C) & (D) apply. These subsections exempt—

(5) inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency;

\* \* \* \* \* \*

(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would . . . (C) constitute an unwarranted invasion of personal privacy [and] (D) disclose the identity of a confidential source and, in the case of a record compiled by a criminal law enforcement authority in the course of a criminal investigation, or by an agency conducting a lawful national security intelligence investigation, confidential information furnished only by the confidential source.

## III. EXEMPTION FIVE

■ Exemption Five applies only to those documents that (1) are "inter-agency or intra-agency memorandums or letters" which (2) "would not be available by law to a party other than an agency in litigation with the agency. . . ." 5 U.S.C. § 552(b)(5). The exemption is intended to protect the deliberative process of government. Congress found that the full and frank exchange of ideas within an agency serves as an integral part of the deliberative processes; to conduct the process in public view would inhibit the free flow of ideas and impair the quality of agency decisions. *See* S.Rep.No.813, 89th Cong., 1st Sess. 9 (1965); H.Rep.No.1497 at 10. Thus, [t]he exemption is designed to encourage a free and candid exchange of ideas during the process of decisionmaking and to prevent predecisional disclosure of incipient policy or decisions that could disrupt agency procedures. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

### A. *Intra-Agency Memoranda*

■ Conoco first contends that the withholding of each of the twenty-seven documents by the DOE and five of the seven

documents by the Department of Justice is improper because the documents are not "intra-agency memoranda."[5] Each of these thirty-two documents withheld by the agencies is handwritten notes made by its employees assigned to investigate Conoco. The handwritten notes reflect strategy decisions of agency personnel in preparing to interrogate Conoco employees in depositions, weighing possible settlement positions, considering evidence and deliberating on various other aspects of the investigation. Conoco and the agencies agree that the handwritten notes are memoranda but disagree on the issue of whether they are "intra-agency" documents. Conoco asserts that these notes are not intra-agency memoranda solely because they were not *circulated within the agency*.

Conoco relies upon *County of Madison v. Department of Justice*, 641 F.2d 1036 (C.A.1, 1981) to support the proposition that handwritten notes cannot constitute "intra-agency memoranda." In *Madison*, the Department of Justice, pursuant to Exemption Five, withheld letters written by attorneys for the Department of Justice to the Oneida Indian Nation regarding settlement negotiations. The Justice Department conceded that the withheld documents were not intra-agency memoranda or letters, but claimed that the policy of the FOIA should be extended to protect correspondence between an agency and a third party regarding settlement negotiations. The Court rejected this suggestion and declined to extend the boundaries of Exemption Five.

The facts in *Madison* are readily distinguishable from the facts in this case. The *Madison* court was not confronted with the issue of whether the documents were "intra-agency" memoranda, as both parties agreed that they were not. Furthermore, the character of the *Madison* documents were vastly different from those documents Conoco now seeks. Clearly the *Madison* documents were not intra-agency memoranda or letters, but were correspondence between a governmental agency and its adversarial nongovernmental third party. No

reasonable construction could classify the documents as "intra-agency." Therefore, *Madison* is not dispositive.

Conoco would construe the term "intra-agency" to require that memoranda be "*circulated within the agency*." The Court finds no support for this definition. Instead, this Court believes that "intra-agency" should be given its commonplace, everyday meaning. It holds that the term "intra-agency memorandums" includes handwritten notes written by agency employees which *remain within the files or confines of the agency*. This definition is consistent with the commonsense approach suggested by *Ryan v. Department of Justice*, 617 F.2d 781, 790 (C.A.D.C.1980):

> We start from the proposition that FOIA exemptions are to be interpreted narrowly. The Senate Committee attempted to keep Exemption 5 as narrow as was "consistent with efficient Government operation." S.Rep.No. 813, 89th Congs., 1st Sess. 9 (1965). Unquestionably, efficient government operation requires open discussions among all government policy-makers and advisors, whether those giving advice are officially part of the agency or are solicited to give advice only for specific projects. Congress apparently did not intend "inter-agency" and "intra-agency" to be rigidly exclusive terms, but rather to include any agency document that is part of the deliberative process.... This commonsense interpretation of "intra-agency" to accommodate the realities of the typical agency deliberative process has been consistently followed by the courts.

Applying a commonsense approach, courts have found agency employee's handwritten notes directed "to file" to be privileged under Exemption Five. *See e. g., Associated Dry Goods Corp. v. NLRB*, 455 F.Supp. 802, 810–11 (S.D.N.Y.1978); *Joseph Horne Co. v. NLRB*, 455 F.Supp. 1383, 1387–88 (W.D.Pa.1978); *Marathon LeTourneau Co. v. NLRB*, 414 F.Supp. 1074, 1080 (S.D.Miss.1976). It would be an anomalous result to exempt memoranda that have cir-

---

**5.** The five documents withheld by the Department of Justice are Document Nos. 1, 2, 3, 4 & 6, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

culated within the agency and yet force disclosure of the handwritten notes used to prepare those same memoranda. Nor does the Court believe that the handwritten notes in *Joseph Horne, supra* at 1387–88, directed "to file" are distinguishable from the handwritten notes in this case. To exempt handwritten notes merely because the notes state "to file" while requiring disclosure of handwritten notes because they lack the words "to file" seems to rely more on form rather than on substance. Consequently, this Court holds that the handwritten notes are "intra-agency memorandums" and are exempt if they satisfy the second prong of Exemption Five.

**B. The Attorney Work-Product Privilege and Executive Privilege**

■ Exemption Five exempts those documents that are "normally privileged in the civil discovery context." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 148, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975). The *Sears* Court noted that the attorney work-product privilege and the executive privilege, available in civil discovery, are also available to the agencies. *Id.* at 149, 95 S.Ct. at 1515. The DOE claims the attorney work-product privilege for all twenty-seven documents it withholds from Conoco. Likewise, the Department of Justice claims the same privilege for one of the seven withheld documents.[6] Conoco does not argue that the withheld documents are not attorney work-product, but asserts that the agencies have "long since waived any claim of attorney work-product."[7] It relies upon *Coastal States Gas Corp. v. Department of Energy*, 644 F.2d 969 (C.A.3, 1981) and *Ryan v.*

*Department of Justice*, 617 F.2d 781 (C.A.D.C.1980) for the proposition "that the agencies are required to submit the Vaughn index within the statutory time frame provided in the statute for responding to a ... requester, and that [the] failure to claim the attorney work-product at that state ... constitutes a waiver of attorney work-product."[8]

*Coastal States* and *Ryan* do not support such a proposition. In *Coastal States* the governmental agency submitted a revised Vaughn index the day before the hearing in the district court. The district court held that the index was untimely and refused to consider it. The Court of Appeals reversed the district court holding, finding that it was an abuse of discretion when it refused to consider the revised index. 644 F.2d at 971. In the present case, the DOE and Department of Justice submitted their revised Vaughn indices identifying the documents and claiming the attorney work-product privilege, more than four months prior to the hearing in district court. Consequently, *Coastal States* compels this Court to consider the indices claiming the attorney work-product exemption.

Nor does *Ryan v. Department of Justice, supra,* aid Conoco's quest for the agencies' investigatory file. In *Ryan* the Court of Appeals for the District of Columbia held that the government had waived its exemption when it asserted the exemption for the first time in the Court of Appeals. It noted that the agency must identify "the specific statutory exemptions ... *at least by the time of the district court proceeding.*" 617 F.2d at 792. Clearly the agencies have satisfied this requirement.[9] Accordingly, the

---

6. Document No. 1, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

7. *See* Civil Action Nos. 80–418, 80–515 (D.I. 21 at 11).

8. *Id.* at 11–12.

9. *Jordan v. United States Department of Justice*, 591 F.2d 753, 779 (C.A.D.C.1978) also refutes Conoco's assertion that exemptions cannot be claimed in district court. In *Jordan*, the agency first claimed Exemption Five, but then asserted Exemption Two in the district court. It then asserted Exemption Seven on appeal. The Court of Appeals for the District of Colum-

bia held that Exemption Two and Five were properly asserted, but that Exemption Seven was untimely. It stated:

It is basic that the FOIA establishes a statutory presumption that all federal records are available to "any person." This presumption is rebutted only by evidence presented by an agency that the item sought is exempt from disclosure under one of the nine enumerated exemptions. The agency bears the full burden of proof when an exemption is claimed to apply. To meet this burden the agency must identify the *specific statutory exemption* relied upon and demonstrate that the exemption applies to the documents in question.

Court holds that the twenty-seven documents withheld by the DOE and the document withheld by the Department of Justice are exempt by the work-product privilege.

The DOE also claims the executive privilege for the twenty-seven documents it withheld. Likewise, the Department of Justice claims it for four of the seven documents it withheld.[10] Conoco asserts that documents which "are not circulated within the agency are simply not part of the agency's deliberative process." Rather, it claims that "they are tools for use by the people working in the investigation for their own use."[11]

█ Exemption Five exempts the deliberative process, not deliberative materials, per se. If these handwritten notes outlining the agencies' employees' thought process were revealed, the deliberative process would suffer. An agency employee would be much more reluctant to commit thoughts to paper that might later be revealed. Similarly, an employee may feel compelled to destroy personal notes after they were written, only to discover shortly thereafter that they could be used in another aspect of the case. To require disclosure of these documents because there was no circulation within the agency would totally ignore the Supreme Court's mandate that common-sense should dictate the FOIA requests. *See EPA v. Mink*, 410 U.S. 73, 91, 93 S.Ct. 827, 838, 35 L.Ed.2d 119 (1973). To require disclosure on these grounds would chill agency employees and lead to inefficient government. It is a *non sequitur* for Conoco to argue that the documents are "tools for use of the people working in the investigation" and yet claim that they "are simply

not part of the agency's deliberative process." Accordingly, the Court rejects Conoco's argument that documents must be circulated within the agency in order to qualify as deliberative material.

█ Conoco claims that four documents withheld by the Department of Justice should not be exempt under Exemption Five. Three of these four documents are undated.[12] Conoco's contention that the agency has failed to establish that the documents are predecisional is unfounded. Handwritten notes need not be dated in order to qualify for the exemption. It is sufficient that the handwritten notes contain sufficient information to indicate that it is predecisional. It is undisputed that the information contained in the notes identifies the documents as predecisional.[13] Hence, these documents are exempt.

█ Conoco asserts that the fourth document[14] is not exempt pursuant to Exemption Five because the memorandum was written on September 1, 1978, subsequent to the indictment and plea of Conoco, thereby making the memoranda postdecisional. This one page document was "written to reflect communication between government prosecutors with respect to issues arising in the course of a criminal investigation.[15] This document is not exempt from disclosure pursuant to Exemption Five. The courts have uniformly drawn a distinction between predecisional communications and communications made after the decision to explain it. *See e. g. NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151–52, 95 S.Ct. 1504, 1516–17, 44 L.Ed.2d 29 (1975). The Supreme Court in *Sears* noted that:

*This showing must be made at the district court level.* An agency cannot prevail on an exemption that it has not raised either at the agency level or in the district court and that it has invoked for the first time in the appellate court. (Emphasis added.)

10. The four documents withheld by the Department of Justice are Document Nos. 2, 3, 4 & 6, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

11. Civil Action Nos. 80–418, 80–515 (D.I. 21 at 10–11).

12. The four documents are Document Nos. 2, 3, 4 & 6, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

13. Affidavit of E. Ross Buckley (D.I. 9 at ¶ 6) (January 23, 1981). *See* Civil Action No. 80–418 (D.I. 13).

14. Document No. 3, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

15. Affidavit of E. Ross Buckley (D.I. 2 at ¶ 6d) (January 23, 1981). *See* Civil Action No. 80–418 (D.I. 13).

Manifestly, the ultimate purpose of this long-recognized privilege [(executive privilege)] is to prevent injury to the quality of agency decisions. The quality of a particular agency decision will clearly be affected by the communications received by the decisionmaker on the subject of the decision prior to the time the decision is made. However, it is difficult to see how the quality of a decision will be affected by communications with respect to the decision occurring after decision is finally reached; and therefore equally difficult to see how the quality of the decision will be affected by forced disclosure of such communications, as long as prior communications and the ingredients of the decisionmaking process are not disclosed ... [The distinction between predecisional and postdecisional] is supported not only by the lesser injury to the decisionmaking process flowing from disclosure of postdecisional communications, but also in the case of those communications which explain the decision, by the increased public interest in knowing the basis for agency policy already adopted. The public is only marginally concerned with reasons supporting a policy which an agency has rejected, or with reasons which might have supplied, but did not supply, the basis for a policy which actually adopted on a different ground.... In contrast the public is vitally concerned with the reasons which did supply the basis for an agency policy actually adopted.

Because this fourth document is postdecisional, the Department of Justice must disclose the document to Conoco.

## IV. EXEMPTION SEVEN

The Department of Justice claims that Exemption Seven(D) exempts two documents from disclosure.[16] It claims that one document contains "confidential information furnished by a confidential source" and

that the other document, furnished by Conoco, was "intended to be confidential."[17]

█ Exemption Seven(D) differs from other FOIA exemptions in that its applicability depends not on the specific factual contents of a particular document; instead, the pertinent question is whether the information at issue was furnished by a confidential source during the course of a legitimate criminal law investigation. *Lesar v. United States Department of Justice*, 636 F.2d 472 (C.A.D.C.1980). The Act clearly states that confidential information furnished by a confidential source compiled in the course of a criminal investigation is not to be revealed. Congress believed that potential sources would fear that disclosure of information would reveal their cooperation and that such sources would be discouraged from cooperating. *Church of Scientology of California v. United States Department of Justice*, 410 F.Supp. 1297, 1302 (C.D.Cal. 1976). The sponsors of the 1974 amendments to the FOIA and the Congress believed that the exemption would protect the confidential files of law enforcement. Senator Hart, principal sponsor of the amendment, assured the opponents of the Act that the Act was careful to protect law enforcement efforts:

The major change in conference was the provision which permits law enforcement agencies to withhold confidential information furnished only by a confidential source. In other words, the agency not only can withhold information which would disclose the identity of a confidential source but also can provide blanket protection for any information supplied by a confidential source. The President is therefore mistaken in his statement that the FBI must prove that disclosure would reveal an informer's identity; *all the FBI has to do is to state that the information was furnished by a confidential source and it is exempt.* (Emphasis supplied.)

---

**16.** Document Nos. 5 & 7, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).

**17.** Affidavit of Buckley, ¶¶ 6(f) & (h). Conoco does not deny Buckley's assertion in the affida-

vit, it merely states that "We don't believe that Mr. Buckley is competent to testify as to Conoco's intent." Civil Action No. 80–418 (D.I. 21 at 13).

Committee on Government Operations & Committee on the Judiciary 94th Cong., 1st Sess., Freedom of Information Act and Amendments of 1974 (P.L. 93–502), at 8 (Joint Comm. Print 1975), *quoted in Church of Scientology of California v. United States Department of Justice,* 410 F.Supp. at 1303. Thus, there is no requirement that the agency make a showing that there is a promise or an agreement on the agency's part to hold in confidence the information provided by the confidential source. All the agency is required to do is identify the document and state that the information was furnished by a confidential source. To require more detail than this would greatly increase the possibility that the source and content of the confidential correspondence be revealed. Therefore, the Department of Justice has sufficiently claimed the exemption.

 Conoco also asserts that one document [18] should be disclosed because the source of the confidential information already has been disclosed. It claims that under such circumstances, the exemption does not apply. This assertion simply has no merit. Unlike Exemption Seven(C), which protects the confidential source, Exemption Seven(D) "relates solely to information obtained from a confidential source." *Shaver v. Bell,* 433 F.Supp. 438 (N.D.Ga.1977). Accordingly, this document is exempt from disclosure.

The Court will thus require the Department of Justice to disclose Document No. 3, Schedule II, to Conoco and will deny all other document requests from the Department of Justice or DOE.

An Order will be entered in accordance with this Memorandum Opinion.

18. Document No. 7, Schedule II. *See* Civil Action No. 80–418 (D.I. 13).