**RCA GLOBAL COMMUNICATIONS, INC., Plaintiff,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, et al., Defendants.**

Civ. A. No. 81–74.

United States District Court, D. Delaware.

Oct. 16, 1981.

---

Henry A. Wise, Jr., Wilmington, Del., for plaintiff; Alexander P. Humphrey, IV, Robert F. Heath, Washington, D. C., of counsel.

Joseph J. Farnan, U.S. Atty., John X. Denney, Jr., Asst. U.S. Atty., Wilmington, Del., for F.C.C.; Stuart E. Schiffer, Acting Asst. Atty. Gen., Civ. Div., Vincent M. Garvey, Dina R. Lassow, Dept. of Justice, Lawrence S. Schaffner, Asst. Gen. Counsel, Nancy E. Stanley, Asst. Gen. Counsel, John P. Greenspan, Mark S. Hayes, Washington, D. C., of counsel.

Somers S. Price, Jr., of Potter, Anderson & Corroon, Wilmington, Del., for Western Union; William R. Weissman, of Wald, Harkrader & Ross, Washington, D. C., of counsel.

## OPINION

STAPLETON, District Judge.

On February 20, 1981, RCA Global Communications, Inc. ("RCA Globcom") filed suit against the Federal Communications Commission ("FCC")[1] to compel the Commission to disclose some three thousand pages of documents. The documents are the fruits of a subpoena issued to the Western Union Telegraph Company ("Western Union"), which is the target of an ongoing FCC investigation. Along with its Freedom of Information Act ("FOIA")[2] Complaint, RCA Globcom submitted a request for a *Vaughn v. Rosen*[3] index of the disputed records. Because the FCC offered two generic grounds for withholding the West-

---

1. The Complaint also names the Chairman of the FCC and Western Union as parties.

2. 5 U.S.C. § 552 (1978).

3. 484 F.2d 820 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974).

ern Union documents, the Court agreed to entertain the Commission's motion for summary judgment as to those grounds before requiring it to prepare an index.

## I

### A. The Western Union Investigation

Western Union provides domestic Telex and TWX service as a regulated monopoly. Western Union's lines also "interconnect" with those of International Record Carriers ("IRCs") which carry Telex messages abroad. According to complaints filed with the FCC, Western Union refused to provide interconnect service to IRCs in several "gateway" cities in which the FCC had authorized the international carriers to operate. By an Order dated July 17, 1980, the Commission initiated an investigation of Western Union's interconnection practices. The Order provided that the investigation would be "non-public," and that information obtained in the investigation would only be released upon notice to the party which had supplied the information to be disclosed, or upon completion. The purpose of the notice provision was to guarantee to the "supplying party" its rights to seek confidential treatment under FCC regulations. 47 C.F.R. § 0.459.

To further its inquiry, the FCC issued a subpoena duces tecum to Western Union requesting:

1. All documents regarding, referring or relating to interconnection between Western Union's Telex and TWX networks and the Telex networks of the international record carriers from May 1975 to the present.

2. All documents regarding, referring or relating to Western Union's costing and pricing (including discounts) of the domestic-haul portion of the inbound public message service from June 1977 to the present.

3. Document(s) demonstrating the organization of the Western Union Telegraph Company, including, but not limited to, major operational and administrative divisions and identification of supervisory personnel in those divisions from May 1975 to the present.

4. Documents constituting current formal and informal file indices of the Western Union Telegraph Company.

Western Union cooperated with the subpoena and delivered some three thousand pages of documents to the Commission.

### B. RCA Globcom's FOIA Request

In a letter dated November 21, 1980, RCA Globcom filed a request to inspect the Western Union documents pursuant to the FOIA and 47 C.F.R. § 0.461. The FCC's Common Carrier Bureau, which regulates Telex service, denied the request on December 19, 1980. The Bureau explained that the material which RCA Globcom sought was exempt from disclosure under 5 U.S.C. § 552(b)(4) and (7)(A). Although it did not conduct a document by document review, the Bureau asserted a (b)(4) exemption because a "large number" of the Western Union documents contained "commercial or financial information [which was] privileged or confidential." It justified the (7)(A) exemption, protecting "investigatory records compiled for law enforcement purposes" release of which "would interfere with enforcement proceedings", because disclosure would inform RCA Globcom of the "scope, limits, and method" of an investigation in which RCA Globcom was potentially involved. Further, the Bureau ruled, release of subpoenaed documents might impair the FCC's ability to obtain voluntary compliance with its subpoenas in the future.

RCA Globcom appealed this ruling to the full Commission. While its administrative appeal was pending, RCA Globcom filed the present suit. The FCC's Order, released on March 24, 1981, affirmed the Common Carrier Bureau's claim to exemptions 4 and 7A, and adopted a third, new, rationale to justify withholding the Western Union documents. Relying on recent authority in the Court of Appeals for the District of Columbia Circuit, the Commission concluded that the Western Union files were not "agency records," and hence not subject to FOIA disclosure at all. The present Motion for Summary Judgment presents only the "agency records" and 7A exemption claims.

## II

### Agency Records Under FOIA

■ The Freedom of Information Act requires public disclosure of agency records, upon request, with the exception of records exempted under Section 552(b). The Act nowhere defines an "agency record."[4] The FCC urges me to apply a "control" test to determine whether a document created by a third party but within the physical possession of agency is an agency record within the compass of the FOIA.

The first case to adopt the control analysis was *Goland v. CIA*, 607 F.2d 339 (D.C. Cir.1978), *cert. denied*, 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980). Goland requested, among other things, the transcript of a 1948 House Committee hearing held in Executive Session. The agency refused to release the transcript because it remained under the control of the Congress, notwithstanding that it had been in the physical custody of the CIA for almost thirty years. The question, according to Judge Wilkey,

> [w]hether a congressionally generated document has become an agency record, ... depends on whether under all the facts of the case the document has passed from the control of Congress and become property subject to the free disposition of the agency with which the document resides.

607 F.2d at 347. The secrecy of the hearing, the "Secret" marking on the transcript, and the fact that the CIA used the transcript only for internal reference led the Court to the conclusion that the transcript remained under Congressional control.[5] *See also, Holy Spirit Association v. CIA*, 636 F.2d 838 (D.C.Cir.1981).

The D.C. Circuit required disclosure in two subsequent FOIA cases which modify the *Goland* principle. In *Ryan v. Depart-*

*ment of Justice*, 617 F.2d 781 (D.C.Cir.1980), the Court found none of the indicia of control which determined the outcome in *Goland*. The Department of Justice solicited information from Senators regarding the process of selecting federal judicial nominees. Neither the questionnaires themselves, nor the responses by the Senators "indicated that the Senators would have the prerogative to maintain secrecy." *Id.* at 786. Furthermore, unlike the *Goland* transcript, the information contained in the questionnaires related to the "regular business" of the Department of Justice. *See, Id.* note 17 at 787.

In *Carson v. Department of Justice*, 631 F.2d 1008 (D.C.Cir.1980), the Court rejected the argument that presentence investigation reports were not agency records of the United States Parole Commission. Like the *Goland* transcript, a presentence report is created by a non-agency, the probation office of the sentencing court. Nevertheless, the Parole Commission's organic statute required it to consider the presentence report in making its release decisions.[6] Noting that "the presentence report is, after all, central to the Parole Commission's primary function," Judge Wald found it "somewhat anamalous to hold that such reports do not constitute agency 'records' for purposes of the FOIA." *Id.* at 1015. In both *Ryan* and *Carson*, the Court adopted *Goland* to take into consideration the function of the document in the administrative process.

Although the Supreme Court has not directly addressed the *Goland* test, two recent decisions establish the importance of a document's function to the determination of its status as an agency record. In *Kissinger v. Reporters Committee for Freedom of the Press*, 445 U.S. 136, 100 S.Ct. 960, 63 L.Ed.2d 267 (1980), William Safire, a newspaper columnist, requested FOIA disclosure

---

**4.** *See generally*, Note, The Definition of "Agency Records" Under the Freedom of Information Act, 31 Stan.L.Rev. 1093 (1979); Developments Under the Freedom of Information Act—1980, 1981 Duke L.J. 338, 349–354.

**5.** The Court in *Goland* emphasized Congress's constitutional authority to keep its records se-

cret. U.S.Const. Art. I § 5. Private parties, like Western Union, have no such inherent power to modify the disclosure provisions of the FOIA.

**6.** 18 U.S.C. § 4208, 28 C.F.R. § 2.19.

of the former Secretary of State's telephone logs. Kissinger maintained those logs while he was National Security Adviser to President Nixon, then transported them to his new office when he became Secretary of State. In denying Safire's request, the Court emphasized that "mere location of papers and material" did not "confer status as an agency record." *Id.* at 157, 100 S.Ct. at 972. The telephone logs, like Kissinger's other personal records and memorabilia, played no part in State Department decisionmaking. Since close personal advisers to the President were not part of an "agency" under FOIA, the State Department had no duty to disclose the logs to the public.

In *Forsham v. Harris*, 445 U.S. 169, 100 S.Ct. 978, 63 L.Ed.2d 293 (1980), a case involving records maintained by hospitals at the instance of the Department of HEW, the Court remarked that "mere possession" would not suffice to transform a document created outside an agency into an agency record. *Id.* note 16 at 185, 100 S.Ct. at 987. Justice Rehnquist, for the Court, went on to note with approval the only direct reference to the definition of "agency record" in the legislative history:

> A representative of the Interstate Commerce Commission commented that "[s]ince the word 'records' . . . is not defined we assume it includes all papers which an agency maintains in the performance of its functions." Administrative Procedure Act: Hearings on S.1160 et al. before the Subcommittee on Administrative Practice and Procedure of the Senate Committee on the Judiciary, 89th Cong., 1st Sess. 244 (1965).

*Id.* at 184, 100 S.Ct. at 986. This emphasis on the function of the document in the agency's decisionmaking process conforms to the legislative purpose of the FOIA, which was to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." *Rose v. Department of the Air Force*, 495 F.2d 261, 263 (2d Cir. 1974), aff'd, 425 U.S. 352, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

I read the more recent cases applying *Goland*, and the Supreme Court's language in *Kissinger* and *Forsham*, to suggest a "function" rather than a "control" oriented definition of "agency record."[7] The Western Union documents involved in this case are in the possession of the FCC in order to help it determine what if any action to take to regulate Western Union's interconnection with the IRCs. That decision is one to be made in the regular course of the FCC business under its enabling legislation and public scrutiny, subject to appropriate exemptions, of how that decision is made was an objective of the FOIA. These facts alone are sufficient to make these documents "agency records."

Even applying the more restrictive "control" standard articulated in *Goland*, however, I would have to conclude that the documents sought by RCA Global Communications are "agency records" under the FOIA. The FCC cites two features of its Order which had the effect, in the Commission's view, of reserving control of the documents to Western Union. The investigation was to be "non public," and the Commission expressly reserved Western Union's right to request confidentiality before it made any information publicly available before the completion of the investigation.

---

**7.** No court, to my knowledge, has applied *Goland* to records created by private parties, as opposed to a coordinate branch of government. Two circuits declined to decide this issue because it was unripe for adjudication. *Exxon Corp. v. FTC*, 588 F.2d 895 (3d Cir. 1978); *FTC v. Owens-Corning Fiberglas Corp.*, 626 F.2d 966 (D.C.Cir.1980). The plaintiffs in those cases sought judicial protection against the disclosure of their corporate records by the FTC. Congress has since mooted that controversy, at least with respect to the FTC, by exempting material submitted to the FTC under subpoena from the FOIA. Developments, 1981 Duke L.J. 362–67.

I also note that in *Weisberg v. Department of Justice*, 631 F.2d 824, 828 (D.C.Cir.1980), the court held privately created photographs to be "agency records" without reference to *Goland*. Judge Bazelon, for the Court, emphasized that the requested materials "plainly 'reflect the . . . operation, or decision-making functions of the agency.'" (footnote omitted). This bolsters my conclusion that function, not control, is decisive in this case.

*See also*, Note, 31 Stan.L.Rev. at 1111.

While I have serious doubt whether a private party can demand or receive sufficient restrictions on agency use of its documents to preclude their classification as "agency record," I may make that assumption in analyzing the Commission's argument because its order in this case clearly reserved no control for Western Union. I do not read the Commission's Order to do anything more than allow Western Union to assert the confidentiality of its documents consistent with FOIA itself. That is precisely what the regulation upon which the FCC leans so heavily provides. Section 0.459 of Title 47 is part of a subchapter entitled "Public Information and Inspection of Records" which establishes the procedures of FOIA and Privacy Act disclosures. Related regulations establish two categories of documents, those which are routinely non-disclosable, and those which are not disclosed until after a special request. 47 C.F.R. §§ 0.457, 0.459. Documents are withheld under Section 0.459 only if the supplying party "presents a clear and convincing case for non-disclosure consistent with the provisions of the Freedom of Information Act." 47 C.F.R. § 0.459(d). Plainly, this refers to the agency's discretionary authority to disclose material which is FOIA exempt.[8]

In short, rather than creating any substantive right to confidentiality beyond that afforded by the FOIA exemptions and the Trade Secrets Act, 18 U.S.C. § 1905 (1976), Section 0.459 and the Commission's Order simply give Western Union an opportunity to be heard in opposition to disclosure of material which the FCC could withhold under those statutes.

Western Union's concerns in this context are understandable. But neither Western Union nor the Commission advance any interests to be served by non-disclosure which were not considered by Congress in formulating the statutory scheme with its "general philosophy of full agency disclosure"[9] and its specific exemptions. If there are interests involved here which Congress intended to override the public interest in being able to evaluate an agency's performance, those interests will be adequately protected under the exemptions. I decline to create a further exemption in the guise of a restrictive definition of "agency records."

## III

### The Investigatory Records Exemption

The FCC proposes that all of the documents which it obtained from Western Union are exempt from disclosure under 5 U.S.C. § 552(b)(7)(A). Exemption 7A protects investigatory records release of which might jeopardize law enforcement proceedings. Here, the Commission posits three potential sources of prejudice to future enforcement. First, the FCC fears that companies such as Western Union will no longer cooperate with its subpoenas.[10] The result, the agency predicts, will be unnecessary delay.

---

**8.** Section 0.457 reinforces this construction:

(d) ... Under [the exemption for trade secrets, 5 U.S.C. § 552(b)(4)] the Commission is authorized to withhold from public inspection materials which would be privileged as a matter of law if retained by that person who submitted them, and materials which would not customarily be released to the public by that person whether or not such materials are protected from disclosure by a privilege.

\* \* \* \* \* \*

(1) The materials listed in this subsection have been accepted, or are being accepted, by the Commission on a confidential basis pursuant to 5 U.S.C. 552(b)(4). To the extent ... indicated in each case. The materials are not routinely available for public inspection. If the protection afforded is insufficient, it is necessary for person submitting such materials to submit therewith a request for non-disclosure pursuant to § 0.459. A persuasive showing as to the reasons for inspection will be required for inspection of such materials under § 0.461.

See, Note, A Procedural Framework for the Disclosure of Business Records under the Freedom of Information Act, 90 Yale L.J. 400, 404–406, Note 39 at 408 (1981) (describing similar regulations).

**9.** H.Rep. 1497, 89th Cong. 2d Sess., 6 (1966), *quoted* in *Conoco v. DOE*, 521 F.Supp. 1301 (D.Del.1981).

**10.** The litigation against the FTC to obtain protection against disclosure suggests that this fear may have some substance. *See* note 7, *supra.*

While the FCC's argument has surface appeal, it does not withstand analysis. The FCC's access to the documents at issue in this case does not rest on voluntary cooperation, but on its statutory subpoena power. If a party lacks a substantial ground upon which to resist a subpoena one can reasonably expect it to do as Western Union did in this case, comply with the FCC demand. If a party in that position balks, the FCC may require some minimal effort to secure full compliance, but brief delays occasioned by summary pleadings were not the kind of injury which Congress intended to thwart public disclosure, any more than delays in agency enforcement resulting from the processing of FOIA requests themselves.

The FCC's argument, therefore, reduces to two possible claims. The first is that there may be firms with good faith defenses to a subpoena who will or will not press those claims depending on what assurance the firm can extract from the Commission with respect to FOIA disclosure. This claim must be evaluated, however, in light of the limited authority of the FCC to give such assurance. Unless the subpoenaed material is "routinely not available for public inspection" under 47 C.F.R. § 0.457 because it is exempt under 5 U.S.C. § 552(b)(4) or covered by the Trade Secrets Act, the FCC, under the regulations discussed above, cannot provide assurance against disclosure in advance. It is authorized only to give the assurance that it gave Western Union in this instance, that the subpoenaed party will have the opportunity to supply clear and convincing evidence of eligibility for an exemption before the FCC decides that issue. 47 C.F.R. § 0.459. Given this limitation, I find it unlikely that decisions on whether or not to litigate possibly meritorious defenses will turn on agency assurances with respect to FOIA disclosures.

The only other alternative is that the FCC claims that it must have the authority to promise confidentiality to sources of information in order effectively to conduct its investigations. Plainly the FOIA does not authorize a blanket exemption for confidential sources in civil cases, as it does for criminal investigations.[11] I do not rule out the possibility that an agency may demonstrate that confidentiality may be required in a particular investigation in order to obtain the cooperation of an important witness, but the FCC has not done so in this case.

The Commission's second claim is that release of the Western Union documents would inform RCA Globcom of the scope of the investigation. This cannot support a blanket exemption. The FCC itself delineated the scope of the material it sought in its subpoena, which is in the public record as well as the record of this case. Release of the documents themselves do not add new information about the scope or purpose of the FCC's inquiry.

The Commission's third argument is more substantial. RCA Globcom's interest in the Western Union investigation stems from its own commercial stake in interconnection. The Affidavit of Theodore D. Kramer avers that the Commission may decide to expand the investigation in order to examine in detail the interconnection strategies of the IRCs, "including RCA Globcom," and that if the Commission should so decide, "officials of these companies may be called as witnesses." Mr. Kramer goes on to express a concern that release of documents to RCA Globcom will enable it to impede the investigation by tailoring its answers to questions. I agree that if the FCC does indeed plan to call on RCA Globcom to furnish information as a witness, premature disclosure of Western Union data might harm "the Government's case," *NLRB v. Robbins Tire & Rubber*, 437 U.S. 214, 232, 98 S.Ct. 2311, 2322, 57 L.Ed.2d 159 (1977). But the operative word here is "if." Fairly read, the Kramer Affidavit does nothing more than suggest that an investigation of Globcom's affairs is a *possibility*. The agency has the burden of showing that withheld documents are within the scope of an exemption and this burden is not met in the

---

11. *Compare* 5 U.S.C. § 552(b)(7)(D) which exempts all information obtained from confidential sources in the course of criminal or national security investigations.

586

context of Exemption 7A when it offers no affirmative reason to believe that a relevant investigation is likely to occur. *See Coastal States Energy Corporation v. DOE,* 617 F.2d 854, 870 (D.C.Cir.1980).

 Even if the record were expanded to fill this gap, however, it would still be insufficient to show that the FCC may withhold all of the Western Union documents. The Kramer Affidavit categorizes those records as:

> revenue forecasts, business strategies (proposals for Western Union's corporate response to current situations and in the event of certain regulatory decisions and actions by the IRCs), summaries of meetings of policy groups, marketing plans, analyses of current marketplace situations and Western Union's relative position in given markets, technical data such as call completion ratios and correspondence with other common carriers.

Congress amended the FOIA in 1974, substituting "records" for "files" to make it clear that the courts had to consider the nature of the particular documents as to which exemption is claimed in order to avoid impermissible "commingling" by an agency's placing in an investigatory file material that does not legitimately have to be kept confidential.

*NLRB v. Robbins Tire & Rubber, supra,* 437 U.S. at 229–30, 98 S.Ct. at 2321. Although generic claims are permissible, the record must be sufficient to demonstrate the Government's right to exemption as to each category of document. *Coastal States Gas Corp. v. DOE,* 644 F.2d 969, 978 (3d Cir. 1981). *See also, Moorefield v. Secret Service,* 449 U.S. 909, 101 S.Ct. 283, 66 L.Ed.2d 139 (White, J., dissenting from denial of cert.). A document by document index is not required, but the agency's justification of its claim to exemption "must not consist of 'conclusory and generalized allegations of exemptions.'" What is required is "'a fairly detailed analysis in manageable segments.'" *Ferri v. Bell,* 645 F.2d 1213–1222 (3d Cir. 1981), *quoting Vaughn v. Rosen, supra,* 484 F.2d at 826. The record in this case does not meet that standard. Contrary to the Commission's assertion, it is not apparent on this record that RCA Globcom's exposure to each of the documents poses a threat of tailored evidence in relevant areas.

Some form of index will accordingly be necessary. It must be sufficiently specific to permit RCA Globcom to respond meaningfully to the FCC's claim to exemption, and to permit this Court to make the findings required by law.

## IV

### Conclusion

Because I am satisfied neither by the FCC's showing that disclosure to RCA Globcom will endanger a law enforcement proceeding, nor by its demonstration that all of the documents within each of the eight broad categories it has described are entitled to a 7A exemption, the FCC's summary judgment motion will be denied.